APPEAL OF VAN DYKE: VAN DYKE, Appellant, vs. TAX COMMISSION and another, Respondents.

*February 7—March 5, 1935.*

530

*George D. Van Dyke* in *pro. per.* and *Douglass Van Dyke* both of Milwaukee, for the appellant.

For the respondents there was a brief by the *Attorney General, Herbert H. Naujoks,* assistant attorney general, *William A. Zabel,* district attorney of Milwaukee county, and *C. Stanley Perry,* assistant corporation counsel, and oral argument by *Mr. Naujoks* and *Mr. Perry.*

A brief was also filed by *P. M. Beach* and *T. M. Holland,* both of Eau Claire, as *amici curiæ.*

NELSON, J.   George D. Van Dyke, the appellant, here-after called the petitioner, is a retired lawyer and capitalist. His two-hundred-page brief submitted on this appeal evidences his ability, his great industry, and his deep interest in the questions raised.   During the years 1930 to 1933, his sole business was that of investing his surplus capital.   His capital holdings during those years included certain "non-taxable" highway investment bonds issued by Wisconsin counties pursuant to the provisions of sec. 1317*m*—12, Stats. 1919, and certain other bonds issued by Wisconsin municipalities.   The interest received by petitioner on said bonds during the years in question was as follows:

| | | |
|---|---|---|
| 1930 | County Highway Improvement Bonds | $5,950.00 |
| | Other Municipal Bonds | 8,825.00 |
| 1931 | County Highway Improvement Bonds | 5,950.00 |
| | Other Municipal Bonds | 9,582.50 |
| 1932 | County Highway Improvement Bonds | 5,950.00 |
| | Other Municipal Bonds | 9,402.50 |

The assessor of incomes included in petitioner's taxable income interest received by him on both kinds of bonds.

It is contended by the petitioner, (1) that the interest received by him on Wisconsin county highway improvement

bonds was not taxable as income because, (a) the bonds themselves are "non-taxable" under the provisions of the law which authorized their issue, and (b) such interest was not taxable by the income tax law properly construed; (2) that interest received by him on other bonds issued by Wisconsin municipalities was not taxable as income, because (a) such interest is immune from income taxation and was not taxable by the income tax law properly construed; (3) that sec. 4, of ch. 29, Laws of Special Session 1931–1932, known as the emergency unemployment relief income tax law, is unconstitutional and void; (4) that sec. 71.10 (1m) (b), Stats. 1931, which authorizes an alternative assessment of either the actual net taxable income of 1932 or the average so-called untaxed income of 1930 and 1931, depending upon which is the greater, is unconstitutional and void.

We shall first consider the contention of the petitioner that the interest received by him on bonds issued by municipalities of this state is not taxable as income, even though such bonds are not expressly denominated "non-taxable." It is asserted that such bonds are instrumentalities of the several municipalities which are but arms of the state, and that under the well-established rule which forbids the taxation of federal instrumentalities by a state, or of state instrumentalities by the federal government, neither the bonds nor the interest thereon is taxable. It is, of course, well established that federal instrumentalities may not be taxed by a state. *McCulloch v. Maryland,* 4 Wheat. 316, 4 L. Ed. 579; *Weston v. Charleston,* 2 Pet. 449, 7 L. Ed. 481; *New York ex rel. Bank of Commerce v. Commissioners of Taxes and Assessments,* 2 Black. 620, 17 L. Ed. 451; *Collector v. Day,* 11 Wall. 113, 20 L. Ed. 122; *Choctaw, Oklahoma & Gulf R. R. Co. v. Harrison,* 235 U. S. 292, 135 Sup. Ct. 27, 59 L. Ed. 234; *Indian Territory I. Oil Co. v. Oklahoma,* 240 U. S. 522, 36 Sup. Ct. 453, 60 L. Ed. 779; *Howard v. Gipsy Oil Co.* 247

U. S. 503, 38 Sup. Ct. 426, 62 L. Ed. 1239; *Large Oil Co. v. Howard*, 248 U. S. 549, 39 Sup. Ct. 183, 63 L. Ed. 416. In *Gillespie v. Oklahoma*, 257 U. S. 501, 42 Sup. Ct. 171, 66 L. Ed. 338, it was held that profits or income from leases of the United States could not be taxed by a state, since taxation would directly hamper the efforts of the United States to make the best terms in leasing lands belonging to its wards. In *Northwestern Mut. Life Ins. Co. v. Wisconsin*, 275 U. S. 136, 48 Sup. Ct. 55, 72 L. Ed. 202, the tax there in question was held void because it practically amounted to the laying of a burden upon United States bonds, since it involved a direct charge upon interest derived therefrom.

In a case involving the power of the United States to impose a tax on the securities of a state or municipality, it was held in *Pollock v. Farmers' Loan & Trust Co*. 157 U. S. 429, 15 Sup. Ct. 673, 39 L. Ed. 759, that the United States could not tax the income derived from municipal bonds, since it could not interfere with the power of a state to borrow money which is one of its essential elements of sovereignty.

But the present controversy is not ruled by those decisions. The precise question here is whether the state may tax as income the interest paid on bonds issued by its own municipalities. The following authorities hold that a state may tax such bonds as personal property: *Stoddard v. Corbin*, 94 Conn. 543, 109 Atl. 813; *Easton v. Board of Review*, 183 Ill. 255, 55 N. E. 716; *Hall v. Middlesex County Com'rs*, 10 Allen (Mass.), 100; *Cruse v. Fischl*, 55 Mont. 258, 175 Pac. 878; *State (Freese, Prosecutor) v. Woodruff*, 37 N. J. Law, 139; *British Commercial Life Ins. Co. v. Commissioners of Taxes and Assessments*, 31 N. Y. 32, 18 Abb. Pr. 118; *People ex rel. Niagara F. Ins. Co. v. Board of Com'rs of Taxes and Assessments*, 76 N. Y. 64. See also *Drainage Commissioners v. C. A. Webb & Co*. 160 N. C. 594, 76 S. E. 552; *Com. v. City of Philadelphia*, 27 Pa. 497; *Wilkes-Barre*

*Deposit & Sav. Bank v. City of Wilkes-Barre,* 148 Pa. 601, 24 Atl. 111; *State v. Page,* 100 W. Va. 166, 130 S. E. 426, 44 A. L. R. 501.

In the following cases a contrary view was taken: *Napa Sav. Bank v. Napa County,* 17 Cal. App. 545, 120 Pac. 449; *Penick v. Foster,* 129 Ga. 217, 58 S. E. 773, 12 L. R. A. (N. S.) 1159, 12 Ann. Cas. 346; *State ex rel. Da Ponte v. Board of Assessors,* 35 La. Ann. 651; *State ex rel. Louisiana Improv. Co. v. Board of Assessors,* 111 La. 982, 36 So. 91; *Droll v. Furnas County,* 108 Neb. 85, 187 N. W. 876, 26 A. L. R. 543; *Buist v. City Council of Charleston,* 77 S. C. 260, 57 S. E. 862; *National Surety Co. v. Starkey,* 41 S. D. 356, 170 N. W. 582; *Greenwood v. Rickman,* 145 Tenn. 361, 235 S. W. 425.

However, in most of the latter cases a constitutional provision was involved which was held to prohibit such taxation. In this state we have no such constitutional provision. In the absence of a constitutional provision forbidding the taxation of municipal bonds, it is held by the great majority of courts that such bonds may be taxed by the state. All of the cases cited involved the right of the state to tax municipal bonds as personal property. No decision has been called to our attention, and we have found none which involved the right of a state to tax as income the interest received on such bonds.

In our opinion, the rule supported by a majority of the courts is the better rule, and by analogy permits the taxation as income of interest received on such bonds. No one doubts that the legislature has the power to exempt from taxation the interest received on such bonds if in its wisdom it decides to exercise it. We see no distinction between the power to tax municipal bonds as personal property and the power to tax interest paid thereon as income.

It is our conclusion that unless the income from such bonds is made exempt by law it is taxable. So the question for determination is whether the legislature has exempted interest

on such bonds from taxation as income. There is no law expressly exempting such interest. May it be said that notwithstanding that fact the legislature intended to exempt such interest from income taxation? The income tax law was enacted as ch. 658, Laws of 1911. It was one of the last laws enacted by the legislature in that year. It became effective by publication on July 15, 1911. That act worked a very important change in the taxation policy of this state. Prior to that time it had been the policy of this state to levy general taxes upon real and personal property. It was considered by this court, when the income tax cases were before it, that personal property taxation for all purposes had become a thing of the past. *Income Tax Cases,* 148 Wis. 456, 134 N. W. 673, 135 N. W. 164. Mr. Chief Justice WINSLOW, speaking for the court, said (p. 505) :

"By the present law it is quite clear that personal property taxation for all practical purposes becomes a thing of the past. The specific exemptions of all money and credits and the great bulk of stocks and bonds, as well as of all farm machinery, tools, wearing apparel, and household furniture in actual use, regardless of value, goes far to eliminate taxation of personal property; while the provision that he who pays personal property taxes may have the amount so paid credited on his income tax for the year seems to put an end to any effective taxation of personal property. That taxation of such property has proven a practical failure will be admitted by all who have given any attention to the subject. Doubtless this was one of the main arguments in the legislative mind for the passage of the present act. By this act the legislature has, in substance, declared that the state's system of taxation shall be changed from a system of uniform taxation of property (which so far as personal property is concerned has proven a failure) to a system which shall be a combination of two ideas, namely, taxation of persons progressively, according to ability to pay, and taxation of real property uniformly, according to value."

Just nine days before the income tax law was approved by the governor on July 12, 1911, the legislature enacted

ch. 516, Laws of 1911, which was approved by the governor on July 3d. That act created sub. 2m of sec. 1038, of the statutes, which section related to the exemption of property from taxation, and provided as follows:

"Any and all bonds issued by any county, town, city, village, school district or board of school directors of any town organized under the township system of school government in this state, shall hereafter be exempt from taxation."

At the time that law was enacted, the only taxation to which the bonds described therein had theretofore been subject was taxation as personal property, under sec. 1036, Stats. 1898, which listed the following properties as personal property and subject to taxation:

"All debts due from solvent debtors, whether on account, note, contract, bond, mortgage or other security, or whether such debts are due or to become due."

That provision had been a law for many years. Sec. 1036, Stats. 1898. So the conclusion is irresistible that when the legislature, in 1911, enacted ch. 516, it had in mind and intended only to exempt the bonds described therein from personal property taxation. Shortly thereafter the legislature enacted ch. 658, Laws of 1911, income tax law, and therein defined "income" as follows:

"2. The term 'income,' as used in this act, shall include . . . all interest derived from money loaned or invested in notes, mortgages, bonds or other evidence of *debt of any kind whatsoever.*" Sec. 1087m—2 2 (b).

In the very same act, in dealing with corporations' deductions from gross income, the legislature specifically provided that "interest received from bonds or other securities exempt from taxation under the laws of the United States" shall be deductible from gross income. Sec. 1087m—3 (f). In dealing with deductions allowed to persons other than corporations, etc., it again specifically provided that "interest re-

ceived from bonds or other securities exempt from taxation, under the laws of the United States" shall be deductible from gross income. Sec. 1087m—4 (e).

It is inconceivable that the legislature, through inadvertence, omitted to provide that interest received from bonds issued by Wisconsin municipalities should be deductible from gross income, or that it intended by the language used to exempt such interest from income taxation. The income law was too carefully drawn and too long considered to permit of such a conclusion. The language: "All interest derived from . . . bonds or other evidence of debt of any kind whatsoever," is too plain and too inclusive to permit of a conclusion that the legislature did not intend to tax interest received from municipal bonds.

We shall next consider the contention of the petitioner that the interest received by him on Wisconsin county highway improvement bonds was, by the terms of the enabling act and the terms of the bonds themselves, expressly exempt from taxation as income.

The petitioner's bonds were issued pursuant to the provisions of sec. 1317m—12, Stats. 1919, which was a substantial re-enactment of sec. 1317m—12, Stats. 1911. The whole section was originally enacted by ch. 337, Laws of 1911, effective June 15, 1911. That section was as follows:

"Any county, if its board shall so determine, may raise money for original improvement of any portions of the system of prospective state highways by issuing non-taxable four per cent semi-annual interest payment coupon bonds, running not more than ten years, and not exceeding with all other county indebtedness, the constitutional limit, the money to be expended in the respective towns in proportions determined by the county board according to section 1317m—5; such bonds to be in such form as the state highway commission shall approve, and not to be sold at less than par nor to non-residents of the county till residents shall have had reasonable opportunity, in the judgment of the county board, to purchase the same."

Ch. 337 made sweeping changes in the highway laws of this state, created a state highway commission, a prospective system of state highways, and provided that counties might issue "non-taxable four per cent semi-annual interest payment coupon bonds." Sec. 1317$m$—12 of that act continued in force until 1919, when it was repealed, but immediately re-enacted without material change. Though it has been amended several times, it is substantially the same today. Sec. 67.13, Stats. 1933. Each of the bonds involved, however, were denominated on its face a "non-taxable highway improvement county bond," and that each coupon contained the following language: "For interest due . . . on its . . . non-taxable highway improvement county bond. . . ." Nothing is contained in the bonds or coupons expressly exempting the interest from income taxation. Closely following the enactment of ch. 337, Laws of 1911, the same legislature enacted ch. 516, hereinbefore mentioned, exempting from taxation bonds issued by any county, etc., in this state. Shortly thereafter, the legislature enacted ch. 658, the income tax law, in which it provided that "all interest derived from money loaned or invested in . . . bonds or other evidence of debt of any kind whatsoever" shall be taxed as income, sec. 1087$m$—2 2 (b), and in which only interest received from bonds or other securities exempt from taxation under the laws of the United States was permitted to be deducted from the gross income of either corporations or persons. By the same act, sec. 3, sub. 10, sec. 1038 (relating to exemptions from taxation), was amended to read:

"10. All moneys, all debts due or to become due to any person, and all stocks and bonds not otherwise specially provided for. . . ."

Nothing, however, was contained in the income tax act limiting the language, "all interest derived from money loaned or invested in notes, mortgages, bonds or other evi-

dence of debt of any kind whatsoever." It seems clear to us that, at the time ch. 337, Laws of 1911, was enacted, the only taxation to which such bonds could have been subjected was personal property taxation. Applying the reasoning here that was applied to the first contention relating to municipal bonds, and taking into consideration the fact that all of these acts were considered by the same legislature, it seems clear that the legislature, when it authorized the issuing by counties of non-taxable bonds, intended that such bonds should be free from personal property taxation only. Had the income tax law not been subsequently enacted, no one would contend that ch. 337 did anything more, or was intended to do anything more, than exempt such bonds from taxation as personal property. Had the legislature intended by the language "non-taxable bonds" to exempt the interest thereon under the income tax law, which was then before it, and which it shortly thereafter enacted, it seems reasonable to conclude that it would have expressly so provided, since it specifically dealt with interest received from bonds exempt from taxation under the laws of the United States.

The fact that the original county highway improvement bond act has been amended and re-enacted several times since 1911, with the retention of the non-taxable bond clause, is not persuasive on the question of the original legislative intent. It is well established that when a repealing statute re-enacts a provision of an old statute in substantially the same words, no change in the old law is thereby effected, but the original law is deemed to continue in force from its first enactment. *Glentz v. State,* 38 Wis. 549; *Milwaukee v. Milwaukee E. R. & L. Co.* 147 Wis. 458, 133 N. W. 593. The repetition of the "non-taxable" clause in the several amendments, in our opinion, amounts to a reiteration of the legislative meaning first ascribed to such phrase. Ever since 1920, when the attorney general rendered an opinion hold-

ing that interest on non-taxable highway improvement bonds and other municipal bonds of this state was taxable as income, the tax commission has followed that ruling and taxed such interest. That the legislature is in accord with the construction given to the act seems a proper inference, since the legislature has not seen fit to amend the income tax act either exempting such interest specifically or permitting it to be deducted from gross income. We are of the opinion that the legislature never intended to exempt the interest received on the "non-taxable" highway improvement bonds from taxation as income.

We shall now consider the contention of the petitioner that ch. 29, Laws of Special Session 1931–1932 is unconstitutional and void, and that therefore the tax levied in pursuance thereof is illegal and void and should be refunded to the petitioner.

It is first contended by petitioner that ch. 29, as enacted, was not within the call of the governor for the special session, and that therefore the legislature had no authority to enact it. Sec. 4, art. V, Wisconsin constitution provides, so far as here material:

"The governor . . . shall have power to convene the legislature on extraordinary occasions. . . ."

Sec. 11, art. IV, Wisconsin constitution provides:

"The legislature shall meet at the seat of government at such time as shall be provided by law, once in two years, and no oftener, unless convened by the governor, in special session, *and when so convened no business shall be transacted except as shall be necessary to accomplish the special purposes for which* it was convened."

One of the purposes to be accomplished, as stated in the governor's call, was as follows:

"To make provision for the relief of unemployed citizens in co-operation with county and local authorities; such relief preferably to take the form of employment on necessary pub-

lic works, including forestry, and/or of providing the necessities of life when work cannot be provided."

Was ch. 29, reasonably construed, within the purposes sought to be accomplished by the governor and within his call convening the legislature in special session? We think that it was. That particular act was before this court for construction in *State ex rel. Madison v. Industrial Comm.* 207 Wis. 652, 242 N. W. 321. The purpose of that act was considered. It was there said:

"No one can doubt that the primary if not the sole purpose of ch. 29 was to provide emergency relief to the unemployed. . . ."

"It is perfectly obvious that the purpose of sec. 2 (1) was to make immediately available nearly $3,000,000 for the use of those agencies of this state upon whom rested the legal obligation to relieve want and suffering and whose legal duty required the supplying of food, clothing, fuel, etc. This section assumes the existence of a general, state-wide condition, for the allotment to be made thereunder is on the one dollar per inhabitant basis, without regard to the amount of relief rendered or administered during 1931."

It is, however, argued that since about $3,000,000 of the moneys appropriated were distributed directly to the cities, villages, and towns of the state on a *per capita* basis, such moneys went to relieve municipal taxation and the municipalities themselves rather than to relieve the unemployed, and that such distribution had no relation to the relief of the unemployed citizen and did not provide necessities of life to those who were in need as a result of unemployment, because the funds so distributed could lawfully be used for general municipal purposes. The argument fails to take note of the fact, no doubt known and appreciated by the members of the legislature, that unemployment and distress existed generally; that taxation for relief had already become burdensome, and that on account of the non-payment of real-estate taxes the whole problem of local relief was

becoming increasingly serious and more and more impossible to meet. While the *per capita* distribution was directly to the towns, villages, and cities, the intended purpose thereof was not only to relieve the situations which the extraordinary demands made upon the local units of government had brought about, but also to place such local governmental units in a better financial condition to enable them to meet the continuing burdens which a wide-spread depression had thrust upon them. We are of the opinion that the obvious purpose of ch. 29 was to relieve the unemployed, and to provide the necessities of life to those who were unable to find or to be provided with work; that prompt and efficient action was necessary; and that, consequently, distribution through the local units of government subserved the essential purposes of the act. Considering broadly the purposes which the governor had in mind in convening the legislature in special session, and the essential and obvious purposes expressed in ch. 29, we have no doubt that such chapter did not violate sec. 11, art. IV, and all that was enacted thereby was necessary to accomplish the special purposes for which the legislature was convened.

We shall next consider the contention of the petitioner that the emergency income tax provided by ch. 29 was not for a public state purpose and was therefore unconstitutional. The petitioner concedes that conditions as to unemployment might be so bad as properly to be regarded as of state concern, but he argues that nothing less than the existence of such universal poverty and distress resulting from unemployment as to threaten the very existence of the state can properly make the matter one of state concern and justify the state in appropriating money for such purposes. He attempts to minimize the seriousness of the situation which confronted the legislature by citing certain facts found by the legislative interim committee in its report to the legislature. A perusal of the report reveals that it dealt prin-

cipally with those who had been employed by industry and who had lost their jobs. Much of the committee's investigation had undoubtedly been made months before the legislature convened. Certainly the legislature was not bound by the facts submitted in that report or required to ignore the collective knowledge of its members. The conditions that have prevailed since ch. 29 was enacted early in 1932—a period of continued depression marked by unemployment, distress, and need for extensive public relief—support the conclusion that the legislature wisely sensed the seriousness of the situation with which it had to deal. In *State ex rel. New Richmond v. Davidson,* 114 Wis. 563, 88 N. W. 596, 90 N. W. 1067, an appropriation made by the legislature to the city of New Richmond to reimburse it for emergency expenditure made by it following a destructive cyclone was considered. That appropriation was held valid, constitutional, and to involve a matter in which the state was concerned. The appropriation was attacked on numerous grounds to which the court gave extensive and careful consideration. It was there said:

"So we are constrained to hold that the state at large was concerned in the objects of the appropriation in question, and that, if the legislature had been in session June 12, 1899, it might legitimately have appropriated the amount mentioned for the object in question. This being so, it follows that the legislature had the power to pass the act in question to reimburse the city for such expenditures. No forecast could have anticipated and guarded against the calamity. The local authorities were powerless in the presence of such great destruction, suffering, and death. The condition of things, so suddenly precipitated, the claims of humanity, and the good of the state called for immediate and extraordinary relief. In passing the act the legislature were called upon to consider the whole situation. The people of the commonwealth were bowed in sorrow over the great calamity, and the call was for the immediate exercise of the police power of the state on a large scale. The object of the act being

public, and to subserve the common interest and well-being of the people of the state at large, brought the subject legitimately within the power of the legislature. Having the power, the extent of its exercise was a matter of legislative discretion. If there was any doubt as to the power, duty would require us to resolve such doubt in favor of the validity of the act.''

If it may be said that that appropriation was for a public purpose concerning the state as a whole, how much more certainly may it be said here that the appropriation was for a public purpose in which the state as a whole was concerned.

Several contentions of the petitioner urged in support of his assertion that ch. 29 violates the constitution of this state do not, in our opinion, require extended consideration. These contentions are as follows: Ch. 29 violates sec. 23, art. IV, which requires that there shall be "but one system of town and county government, which shall be as nearly uniform as practicable," and sec. 3, art. XI, which grants home rule to cities and villages organized pursuant to law. In our opinion, ch. 29 does not violate either of such provisions, alters in no way the established system of town or county government, or interferes with any rights guaranteed by the constitution to cities or villages. Nor do we consider petitioner's argument sound that ch. 29 violates sec. 10, art. VIII, Wisconsin constitution, which prohibits the state from being a party to carrying on works of internal improvement. It is true that some of the moneys which were paid out by the industrial commission, pursuant to the provision of sec. 2 (2) of the act, which permitted reimbursement to the county or city of twenty-five per cent of the labor cost of public works undertaken to provide for the unemployed, went into such public works, but the primary purpose of the state was not to become a party to carrying on works of internal improvement, but to reimburse the counties and cities which had made work simply for the purpose of providing employment to the unemployed.

Nor does the argument that ch. 29 violates sec. 3, art. VIII, Wisconsin constitution, which provides that "the credit of the state shall never be given, or loaned, in aid of any individual, association or corporation," appeal to us. It was held in *State ex rel. Atwood v. Johnson,* 170 Wis. 251, 176 N. W. 224, "that the state does not lend its credit or create a debt within the meaning of the constitution by making a voluntary lawful gift to a number of its citizens." This was held with respect to the soldiers' bonus surtax.

It is doubtful if many of the petitioner's contentions which are based upon the distribution of moneys raised by the act should even be considered, since they relate primarily to the disposition of the proceeds of the tax after reaching the state treasury. In *State ex rel. Van Dyke v. Cary,* 181 Wis. 564, 191 N. W. 546, it was said:

"Up to the point where the proceeds from such surtax reach the state treasury there has been no violation of any constitutional requirements, either express or implied. The lack of uniformity, if any exists, in this situation is as to the distribution of the proceeds of the tax. It well may be that in view of the substantial differences, not necessary here to particularize, between the Milwaukee system and the state system, the individual taxpayer in Milwaukee receives less real or theoretical benefit per dollar of his contribution to the surtax than does the taxpayer outside of that city, but such is *post,* not *ante,* to the surtax reaching the state treasury and becoming there ready for disbursement. That there is a substantial distinction between an inequality in the assessing or collecting of a tax and inequality in the disbursing of its proceeds among those who contributed, and that while the former may invalidate the tax while the latter does not, is established doctrine in this state."

Petitioner next contends that the emergency tax (sec. 4, ch. 29) is a double tax in its most obnoxious form. He argues that the normal income tax for 1932 is one tax and the emergency tax for 1932 is another income tax for the same year. Assuming that to be true, it does not follow that

double taxation resulted. Petitioner argues that if, in an emergency, larger revenues are desired, the rates may be increased or the revenues increased by imposing surtaxes. We find nothing in sec. 4, of ch. 29, which militates against the conclusion that that law was in substance and effect a surtax law. It was obviously passed for the purpose of raising additional moneys for specific purposes. The fact that it was not enacted at the same time that the original normal income tax was enacted in 1931 is in our opinion immaterial, and gives rise to no objection that would not be applicable equally to a law relating to surtaxes. It is our opinion that petitioner's contention that sec. 4, ch. 29, results in double taxation is fully answered by *State ex rel. Atwood v. Johnson,* 170 Wis. 218, 175 N. W. 589.

Petitioner next contends that the income tax imposed by sec. 4, ch. 29, is not an income tax within the meaning of sec. 1, art. VIII, Wisconsin constitution, because in some cases it may amount to a tax on "gross receipts," since it is provided therein (sec. 4 (2) (b) ) that "gains or losses on the sale or disposition of stocks, bonds and other securities and from the sale of real estate or personal property provided for in paragraph (d) of subsection (2) of section 71.02 and in subsection (3) of section 71.03 and in subsection (3) of section 71.04 shall not be applicable, unless said assets constitute the regular stock in trade of the taxpayer which would properly be included in the inventory if on hand at the close of the year, or unless the property is held by the taxpayer in the course of his regular trade or business." A sufficient answer to that contention in this case is that the petitioner's income was not so taxed. He was allowed his deductions because he was within the class of persons covered by the language "unless the property is held by the taxpayer in the course of his regular trade or business." Even though there might be merit in such a contention when raised by one affected by it, which we do not now

decide, the petitioner may not raise it since he is not affected by it. No one can plead the unconstitutionality of a law unless he is affected by it. *Will of Heinemann,* 201 Wis. 484, 230 N. W. 698; *State v. Arnold, ante,* p. 340, 258 N. W. 843.

The petitioner next contends that the alternative basis prescribed by sec. 71.10 (1m) (b), Stats. 1931, for making the assessment for the income tax for the year 1932 is unconstitutional. The facts upon which this contention rests are as follows: The assessor of incomes used as a basis for the assessment so much of the petitioner's incomes for 1930 and 1931 which had not theretofore been used, under the three-year average system, while some other taxpayers may possibly have been assessed upon their actual net income of 1932. As a result, the petitioner was obliged to pay a larger tax than if he had been assessed on his actual net income of 1932 or upon a three-year average of his incomes for 1930, 1931, and 1932. Petitioner's actual net income for 1932, including the challenged items of interest from municipal bonds, was $32,086.41. He was assessed on $64,611. The petitioner contends that the alternative method of assessment provided by ch. 448, Laws of 1931 (sec. 71.10 (1m) (b) ), as applied to him, violates the rule of equality prescribed by the Fourteenth amendment to the constitution of the United States.

Prior to the adoption of ch. 448, Laws of 1931, income taxes in this state had been levied for several years upon a three-year average basis. The three-year average basis of income taxation was considered in *Fitch v. Tax Comm.* 201 Wis. 383, 230 N. W. 37, and held to be constitutional in *West v. Tax Comm.* 207 Wis. 557, 242 N. W. 165. In 1931 the legislature abandoned the three-year average basis of income taxation and was confronted with the problem of getting back upon an annual basis. At that time not all of the petitioner's income for the years 1930 and 1931 had been used as a basis for the taxes assessed annually against him

since only two-thirds of his net income for the year 1930 and one-third of his income for the year 1931 had entered into the computation theretofore employed in determining the basis for his tax. Under the three-year average plan, income of a given year would not be fully and completely used for tax purposes until it had been used in the average three times or until used in the average for three successive tax years. Under the income tax act of 1931, the strictly three-year average basis was used for the last time in connection with the income tax assessed in 1932. The legislature, in our opinion, was entitled to consider as unused for tax purposes such portions of the gross incomes for 1930 and 1931 as had not been fully and completely used as a basis for computation of income tax. It therefore provided for the averaging of the incomes of 1930 and 1931 by giving to the former one-third weight and to the latter two-thirds weight. The legislature might have provided that the basis for the 1932 tax should include the net income for that year only. However, it determined to tax the untaxed income of 1930 and 1931 or the income of 1932, whichever was the greater. The uniformity clause—sec. 1, art. VIII, Wisconsin constitution—does not apply to income taxes. The only uniformity required under the income tax law is uniformity within the class. It is enough that there be no discrimination in favor of one as against another of the same class, and that the method of assessment and collection is not inconsistent with natural justice. *Michigan Central R. Co. v. Powers,* 201 U. S. 245, 26 Sup. Ct. 459; *State ex rel. Atwood v. Johnson,* 170 Wis. 218, 175 N. W. 589.

Nor in our opinion is the alternative basis prescribed by sec. 71.10 (1m) (b), so arbitrarily retroactive as to make it unconstitutional. It has been held that an income tax law does not offend any constitutional provision because it is made to apply retroactively to the year in which it is passed. *Income Tax Cases,* 148 Wis. 456, 134 N. W. 673, 135 N. W. 164.

Of course, a law must not be given retroactive effect or application beyond the time when a constitutional amendment authorizing the enactment of a particular law became effective. *Lynch v. Hornby*, 247 U. S. 339, 343, 344, 38 Sup. Ct. 543; *Brushaber v. Union Pac. R. R.* 240 U. S. 1, 20, 36 Sup. Ct. 236. In *Stockdale v. Insurance Companies*, 20 Wall. 323, 331, 22 L. Ed. 348, in sustaining the provision which was assailed because of its retroactive character, it was said:

"The right of Congress to have imposed this tax by a new statute, although the measure of it was governed by the income of the past year, cannot be doubted; much less can it be doubted that it could impose such a tax on the income of the current year, though part of that year had elapsed when the statute was passed. The joint resolution of July 4th, 1864, imposed a tax of five per cent upon all income of the previous year, although one tax on it had already been paid, and no one doubted the validity of the tax or attempted to resist it."

In *Cooper v. United States*, 280 U. S. 409, 50 Sup. Ct. 164, 165, it was said:

"That the questioned provision cannot be declared in conflict with the Federal Constitution merely because it requires gains from prior but recent transactions to be treated as part of the taxpayer's gross income has not been open to serious doubt since *Brushaber v. Union Pac. R. R.* 240 U. S. 1, 20, 36 Sup. Ct. 236, and *Lynch v. Hornby*, 247 U. S. 339, 38 Sup. Ct. 543."

It thus appears that an income tax law which is given retroactive effect by the legislature cannot properly be assailed on constitutional grounds, if it applies to the year in which the law is enacted or if it applies to prior but recent transactions. See Black, Income Cases, p. 28, § 22; note, 11 A. L. R. 518; 48 Harvard Law Review, p. 592, particularly at page 597, which treats of federal retroactive income tax laws.

Such other incidental contentions as have been made by the petitioner have received consideration, but, in our opin-

ion, do not merit separate treatment. To treat each and every of his contentions would unduly prolong this opinion and serve no useful purpose.

The established rule requires us to sustain acts of the legislature unless they are beyond all reasonable doubt unconstitutional.

It is our opinion that ch. 448, Laws of 1931 (sec. 71.10 (1m) (b) ) does not offend against either the constitution of the United States or the constitution of this state.

*By the Court.*—Judgment affirmed.