WELCH, Respondent, vs. HENRY, State Treasurer, Appellant.

*September 16, 1936—January 12, 1937.*

For the appellant there was a brief by the *Attorney General* and *Herbert H. Naujoks,* assistant attorney general, and oral argument by *Mr. Naujoks.*

For the respondent there was a brief by *Bundy, Beach & Holland,* and oral argument by *John M. Campbell,* all of Eau Claire.

A brief was also filed by *Lecher, Michael, Whyte & Spohn* of Milwaukee, as *amicus curiæ.*

WICKHEM, J.   The sole question upon this appeal is the constitutionality of sec. 6, ch. 15, Laws of 1935, which is

entitled, "Emergency Relief Tax on Certain 1933 Dividends."

The material portions of the statute here in question are as follows:

"(1) For the purpose of this section.

"(a) 'Person' shall mean persons other than corporations as defined in subsection (1) of section 71.02.

"(b) 'Dividends' shall mean all dividends derived from stocks whether paid to shareholders in cash or property received in the calendar year 1933, or corresponding fiscal year, and deductible under subsection (4) of section 71.04.

"(d) 'Net dividend income' shall mean gross dividend income less seven hundred and fifty dollars.

"(2) To provide revenues for relief purposes there is levied and there shall be assessed, collected, and paid, an emergency tax upon the net dividend income of all persons in the calendar year 1933 or corresponding fiscal year at the following rates:

"(a) On the first two thousand dollars of net dividend income or any part thereof, at the rate of one per cent.

"(b) On the next three thousand dollars of net dividend income or any part thereof, at the rate of three per cent.

"(c) On all net dividend income above five thousand dollars, at the rate of seven per cent."

Plaintiff's first contention is that the act is discriminatory and obnoxious to the provisions of the Fourteenth amendment to the United States constitution as well as to secs. 1 and 22, of art. I, Wisconsin constitution. These sections read as follows:

"Section 1. All men are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted among men, deriving their just powers from the consent of the governed."

"Section 22. The blessings of a free government can only be maintained by a firm adherence to justice, moderation, temperance, frugality and virtue, and by frequent recurrence to fundamental principles."

Both plaintiff and defendant concede that while the legislature may classify persons for purposes of taxation, the classification must be based on reasonable differences or distinctions which distinguish the members of a class from those of another in respects germane to some general and public purpose or object of the particular legislation. *Louisville Gas & Electric Co. v. Coleman,* 277 U. S. 32, 48 Sup. Ct. 423. This rule is well settled and calls for no further exposition here. Plaintiff's claim is based upon the fact that under the law as it existed in 1933, and upon which plaintiff reported and paid his income taxes for that year, there was allowed to him as a deduction dividends received from Wisconsin corporations. The emergency relief tax enacted in 1935 levied a graduated tax upon dividends from Wisconsin corporations received in 1933 and at that time deductible from plaintiff's gross income. It is contended that there is no difference between plaintiff and persons receiving no income from dividends paid by Wisconsin corporations that reasonably warrants such a classification. It is not contended that the legislature in 1933 could not have abolished the exemption of this dividend income if the net result had merely been to throw into the total of assessable income for the year 1933 the Wisconsin dividend of a particular taxpayer and subject it to the normal taxes for that year. However, had the legislature done this, the result would have been a general income tax, and the dividend income would have been treated on a parity with all of the taxpayer's other income. It would have been subject to the same deductions, and he could have subtracted from it the same losses that he could as against any other sort of income and it would have been taxed on an absolute parity with such other income. It is obvious that the question here is quite different. The question is whether the legislature having theretofore exempted dividends received from Wisconsin corporations from a normal tax may by

separate act subject them to a special tax for emergency relief purposes. It is clear to us that there is but a single ground of differentiation, and that the classification must stand or fall upon this ground. Does the fact that the taxpayers who received dividends of Wisconsin corporations were exempt from a normal tax in 1933 so differentiate them from other persons receiving incomes during this year as to justify the subsequent levy upon them of a special income tax to meet a particular public emergency? As thus stated, two questions are involved: (1) Is the classification a valid one, and (2) whatever the answer to this may be, Is there in fact any discrimination against a person receiving income from Wisconsin dividends? If the first question receives an affirmative answer, the law is valid so far as its alleged discriminatory features are concerned. If the second question receives a negative answer, plaintiff has no standing to attack it, since his rights are not adversely affected. It is our conclusion that the fact that the income had previously been exempt from a normal tax is a sufficient reason for giving it different treatment upon the emergency tax. It does not impress us as material upon the issue of discrimination whether the previous exemption was accomplished by taxing all income except that derived from dividends of Wisconsin corporations or by taxing all income and allowing the deduction of income from this source. These are mere matters of form. The net result was that this income had not been subjected to a normal tax. In searching for subjects of emergency taxation, the legislature for this very reason might impose a special tax for emergency relief upon the recipients of this type of income. The reason for imposing a special burden is as valid as that for exempting it from the normal burden. See *State ex rel. Atwood v. Johnson,* 170 Wis. 218, 175 N. W. 589; *Chicago & N. W. R. Co. v. State,* 128 Wis. 553, 108 N. W. 557. Some point is made of the fact that the

emergency tax upon this particular type of income is at a rate higher than the normal tax. We are not satisfied that such is the case. While the rates are nominally higher, it may well have been considered that this income, if added to the balance of the taxpayer's income, would normally be taxed in the higher rather than the lower brackets of the normal tax, and this factor could be taken account of in establishing rates for the special tax. Recognition of this principle appears to have been given in the case of *Colgate v. Harvey*, 296 U. S. 404, 56 Sup. Ct. 252. Whatever may be the proper conclusion as to the classification, we do not think plaintiff can claim to have been discriminated against, when the whole pattern of tax legislation is considered. It is not apparent to us that one who is exempt from the burden of annually responding to a normal income tax has been injured by requiring him to meet that of an occasional emergency tax. It might with equal or greater force be argued that the original act discriminated against persons receiving income from sources other than dividends of Wisconsin corporations. This being true, plaintiff has no standing to object to the classification adopted.

It is also contended that there is discrimination as between members of the same class for the reason that only a fixed sum is deductible from the net income which does not vary in accordance with the circumstances or amount of the net income of a stockholder receiving dividend income from Wisconsin corporations. We do not consider this objection to be valid. Considering the class to consist of all persons receiving dividends from Wisconsin corporations, all are treated alike, taxed alike, given the same deduction, and the same rate of tax. So long as this is properly treated as an income tax, the progressive character of the rates cannot be considered to be objectionable. It is our conclusion that there is no clear indication here that the purpose or effect of

the act is a hostile or oppressive discrimination against particular persons or classes. *Beers v. Glynn,* 211 U. S. 477, 29 Sup. Ct. 186; *Citizens' Telephone Co. v. Fuller,* 229 U. S. 322, 33 Sup. Ct. 833.

The foregoing consideration of plaintiff's claim that the act is discriminatory took no account of the retroactive features of the law under examination. It now becomes proper to consider plaintiff's objection that the law is invalid because of these features. It is plaintiff's claim that the legislature is authorized to make income tax provisions retroactive during the year of enactment and during the preceding year where the tax upon such preceding year has not been determined and paid, but that it is beyond the power of the legislature to tax dividends received in 1933 by a statute passed in 1935. We deem this objection to be unsound. It was held in *Appeal of Van Dyke,* 217 Wis. 528, 259 N. W. 700, that an income tax which is given retroactive effect by the legislature cannot properly be assailed on constitutional grounds if it applies to the year in which the law is enacted *or if it applies to prior but recent transactions.* This is also the rule as announced by the United States supreme court. *Brushaber v. Union Pacific R. Co.* 240 U. S. 1, 36 Sup. Ct. 236; *Lynch v. Hornby,* 247 U. S. 339, 38 Sup. Ct. 543; *Cooper v. United States,* 280 U. S. 409, 50 Sup. Ct. 164. In the *Cooper Case* it is said:

"That the questioned provision cannot be declared in conflict with the federal constitution merely because it requires gains from prior but recent transactions to be treated as part of the taxpayer's gross income has not been open to serious doubt since *Brushaber v. Union Pacific R. Co.* 240 U. S. 1, and *Lynch v. Hornby,* 247 U. S. 339."

It is our conclusion, (1) that under this rule the legislature may measure an income tax by the income of a year sufficiently recent so that the income of that year may reasonably be supposed to have some bearing upon the present

ability of the taxpayer to pay the tax; and (2) that the legislature, subject to this limitation, may go back at least to the most recent year for which they have returns furnishing data upon which to estimate the total return of the tax to the state. While the present tax may approach or reach the limit of permissible retroactivity, it does not exceed it.

The next two contentions of plaintiff may properly be considered together. They are that the tax is not authorized by the authority contained in sec. 1, art. VIII, Wisconsin constitution, for the imposition of taxes on income because while it purports to be a tax upon income, it is either, (a) a graduated tax on gross receipts, in which case it is void under the authority of *Ed. Schuster & Co. v. Henry,* 218 Wis. 506, 261 N. W 20, and *Stewart Dry Goods Co. v. Lewis,* 294 U. S. 550, 55 Sup. Ct. 525; or (b) that, being levied solely upon income from a particular kind of property, the subject of the tax is so closely bound up with the ordinary attributes of ownership that it amounts to a tax upon the property itself and as such violates the constitutional requirement of uniformity. Sec. 1, art. VIII, provides as follows:

"The rule of taxation shall be uniform, and taxes shall be levied upon such property with such classifications as to forests and minerals, including or separate or severed from the land, as the legislature shall prescribe. Taxes may also be imposed on incomes, privileges and occupations, which taxes may be graduated and progressive, and reasonable exemptions may be provided."

The general principle underlying these contentions is that a tax measured in terms of income from a business, occupation or a particular kind of property is not an income tax within the meaning of that term as used in the constitution, but that it constitutes either an occupation or privilege tax, in which case it must not be levied retrospectively, or a property tax, in which case it must satisfy the constitutional re-

quirements of uniformity. The contention proves too much. If there is any validity to the contention, then a tax may only be considered an income tax if levied upon all the actual net income of a taxpayer. The exclusion from the operation of a taxing statute of the income from any particular source would destroy the income character of the tax. This would follow whether the statute expressly subjected all income to its operation, and then allowed as a deduction income from particular kinds of property, or was made applicable to less than all of the taxpayer's income. As stated before, these are mere matters of form. Hence, if plaintiff's contention be true, the income tax law of 1933 was no more an income tax than is the special act under examination here. It is our conclusion that a tax upon the net income from a particular kind of property is within the constitutional description of income taxes, and is not a privilege tax or one upon the property from which the income is derived. This is, of course, true only if the tax be upon the net income. A tax upon the gross income of particular kinds of property or particular taxpayers or a particular business is doubtless within the condemnation of the *Stewart* and the *Schuster Cases, supra,* and constitutes in effect a tax upon the property itself. However, taxation upon income from dividends falls in a different class. In cases to which this tax is applicable, the income is in a real sense net income to the taxpayer. The expenses of producing the income have been allowed to the corporation prior to its distribution as a dividend. There are no losses or expenses to be deducted so far as this income is concerned, and if there were, the gross deduction of $750 may well be supposed sufficiently to meet any minor expenses that may conceivably be imagined in connection with the production of the income. Thus, the tax is not upon gross receipts, or at least the gross receipts are net receipts so far as the particular item of income is concerned. It is our

conclusion, therefore, that the tax in question constitutes an income tax; that a reasonable deduction is allowed to the taxpayer; and that being an income tax, there is no constitutional objection to the imposition of a graduated or progressive rate of tax upon such income. These conclusions sufficiently deal with the contention that the tax is a privilege tax and that it cannot be retroactively applied. It follows that the order must be reversed.

*By the Court.*—Order reversed, and cause remanded with directions to sustain the demurrer.

FOWLER, J. (*dissenting*). This is an action to recover a tax paid under protest assessed under sec. 6, ch. 15, Laws of 1935, enacted March 27, 1935, which by its terms imposes an emergency tax on persons who received dividends from Wisconsin corporations during the year 1933 which were then deductible from the income on which the normal income tax of the person who received them was computed.

The claimed basis for the imposition of the tax upon the species of income covered by it and not imposing it upon any other species of income during that year, is that all other species of income were included in the income on which the normal income tax was computed, and were thus taxed, while the dividends covered by the section were not included and not taxed. It is reasoned that as these dividends might properly have been taxed during the year 1933 and were not then taxed, it is proper to tax them now, by analogy to the rule that property or income omitted from taxation during one year may be taxed in subsequent years on discovery of the omission.

That reasoning would support a tax imposed by a statute of 1935 on church property and all other property exempt from taxation by the laws as they stood in 1933. Would such a tax be legal, or would it be an illegal interference

with vested property rights? This question was propounded in *First National Bank v. Covington* (C. C.), 103 Fed. 523, 527, where it is said that the court would not say that there might not be an extreme case where retroactive taxation for a previous year upon property then not subject to taxation at all might be levied, but points out that if the power exists at all, there is no limit to its exercise, and under it property exempt by law might be taxed for so many years back that it would be wholly confiscated. The latter of course would not be permissible.

In the *Covington Case, supra*, a state statute by its terms provided that by reason of the· fact that a prior statute taxing the franchises of national banks had been declared invalid by the supreme court of the United States, a tax was imposed on the shares of stock of such banks within the state, and by a section of the latter statute it was applied retroactively to include taxation of shares during the period between the two enactments. The retroactive section was held unconstitutional and a preliminary injunction was granted against assessing any tax under the latter statute for the period prior to its enactment. The period reached back several years, but the injunction went against taxation for the last year of the period as well as the first. It is stated in 2 Cooley, Taxation (4th ed.), § 520, upon the authority of this case, that "It would seem that a statute cannot impose retroactive taxation for previous years upon a class of property not then subject to taxation," and this statement is cited with approval in *Norris v. Tax Comm.* 205 Wis. 626, 628, 237 N. W. 113, 238 N. W. 415.

In *Weber v. City of Detroit*, 158 Mich. 149, 150, 122 N. W. 570, it is held that a statute imposing personal liability for special improvement assessments made prior to its enactment, where no such liability existed prior to its enactment, was void. For like reason a tax levied on property or an

item of income for a period when it was exempt from taxation would be void.

The only adjudicated case bearing directly upon the precise point under discussion that I have been able to discover is the *Covington Case, supra*. I find two other cases, however, that bear upon it indirectly and to my mind quite persuasively. In the *Matter of Pell*, 171 N. Y. 48, 63 N. E. 789, a statute was involved enacted in 1899 that imposed an inheritance tax upon all estates upon remainder or reversion which vested prior to the date of a previously enacted general inheritance tax statute, but which would not come into actual possession or enjoyment until after the date of the enactment, to be taxed when the recipient came into possession. The statute was declared unconstitutional because its effect would be to "diminish the value of these vested estates, to impair the obligation of a contract, and take private property for public use without compensation" (p. 55). In the instant case the respondent's property in the $12,000 of income involved, became vested in him at the time he received it. Now to impose a tax upon it under the statute is to diminish its value, and to take property for public use without compensation precisely as much as did the New York statute stated.

In *Portuondo's Estate*, 19 Pa. Co. Ct. Rep. 419, an inheritance tax statute was involved that provided that "so much of the estates of persons heretofore deceased as has not been actually distributed and paid to persons entitled thereto prior to the passage of this act shall be liable to the tax imposed by this law, as well as the estates of persons who may die hereafter." This was held unconstitutional on the ground that "when the right vested under existing laws is taxed by a subsequent law, for general purposes of government and not for any purpose specially benefiting the owner of such right, it is not only taking the property of such owner without compensation, . . . but it is violating the other con-

stitutional provision that . . . taxes shall be equal" (p. 423).
The opinion quotes from 1 Kent, 455 : "A retrospective stat-
ute, affecting and changing vested rights, is very generally
considered, in this country, as founded on unconstitutional
principles, and consequently inoperative and void."

It is stated in the opinion of the court that it has been held
by this court and by the supreme court of the United States
that income taxes are not void as retroactive if applied to
recent transactions. The cases so holding were considering
net income, as distinguished from individual items, and in-
come received over a consecutive period next antecedent to
the enactment of the taxing statute, not a period wholly dis-
connected with the time of the enactment and separated there-
from by an intervening period not subject to the tax imposed.
It seems to me that the opinion of the court in effect concedes
the invalidity of the retroactive feature of the tax when it
says : "While the present tax may approach or reach the limit
of permissible retroactivity, it does not exceed it." It is not
for the court to fix the limit of retroactivity. If income from
dividends received in 1933 were properly subject to taxation
why not those of 1932 or 1931? Why not go back to 1929,
when dividends were many and large, instead of 1933, when
they were few and small? The basis (1) of the court's rule
by which to test the validity of the tax, that the year must
be "sufficiently recent so that the income of that year may
reasonably be supposed to have some bearing upon the present
ability of the taxpayer to pay the tax," seems to me to be
here absent. I see no connection between receipt of income
from dividends in 1933 and present ability to pay a tax upon
that item of income. Dividends of 1933 have "gone with
the wind" by this time in all but comparatively few cases.

If it be conceded that because the dividends covered by
the statute were not taxed as income during the year 1933
they might properly be subsequently taxed as *income* received

during that year, the tax so imposed would have to be an income tax, computed at the income tax rate in force during that year, or the equal protection clause of the Fourteenth amendment to the United States constitution would be violated.

Dividends from Wisconsin corporations, which are the only ones within the statute, certainly cannot be taxed at a higher rate than dividends from other corporations, else there is inequality. It is true that equality of rate within the class is the only equality necessary to validity of an income tax. But the mere fact that one corporation is a corporation organized under the laws of Wisconsin and another is a corporation organized under the laws of another state, cannot form a basis for taxing a recipient of a dividend from the former and not taxing the recipient of a like dividend from the latter. Recipients of income constitute the class taxed under an income tax statute. If conceivably recipients of corporate dividends may constitute a separate class for income tax purposes, still all recipients of corporate dividends must constitute the class, not recipients of Wisconsin dividends only.

Under the instant section income from dividends is taxed at a rate entirely different from the rate imposed on incomes in 1933. A rate of taxation by the statute lower than the normal might conceivably be supported, because the corporation paid a tax on the earnings comprising the dividends, but a higher rate cannot possibly be. The first $2,000 of income under the statute involved would carry a slightly less tax than the normal tax, but on all above that the tax is higher. On the dividends received by the instant taxpayer the excess under the statute over the normal rate of 1933 is over $200. Moreover, taxpayers under the normal income tax law were entitled to offset capital losses. Such offset is denied by the instant statute. The instant taxpayer had

large capital losses then deductible under the normal income tax statutes.

Counsel for appellant seem to contend in their briefs that the uniformity clause of the state constitution does not apply to income taxation because graduated rates of taxation are expressly provided for. But we have here something more than graduated rates. One class of income is taxed by one table of graduated rates, without deductions for capital losses, while all other kinds of income were taxed in 1933 at lower graduated rates with deductions for such losses. True, the uniformity clause when the constitution was adopted applied only to property taxation because that taxation was the only kind then covered by the clause. See sec. 1, art. VIII, Const., as contained in the statutes of 1858. But when the section was subsequently amended by adding thereto, the declaration of uniformity carried through, and it applies to all other species of taxation subsequently provided for, except as especially excepted by the terms of the amendment. This point is sufficiently covered by *Nunnemacher v. State,* 129 Wis. 190, 221, 108 N. W. 627, where it is said: "Uniformity of taxation or even equality of taxation, as applied to excise taxes, must necessarily mean taxation which does not discriminate, but which operates alike on all persons similarly situated." There is the broad statement in *Appeal of Van Dyke,* 217 Wis. 528, 259 N. W. 700, that the uniformity clause does not apply to income taxes, but that is forthwith qualified by the statement that "the only uniformity required . . . is uniformity within the class," and this implies a proper classification.

The inequalities above stated made the tax imposed upon the respondent void if it be considered as an income tax. The tax is referred to in the opinion of the court as a "special income tax." But it is not in my opinion an income tax at all but a property tax, and considered as such it is plainly

violative of the uniformity clause of the state constitution. An income tax is a tax on income as a whole, not on individual items of income. It is a tax on net income, as distinguished from gross, and in computing it all items of income must be included. It has been said by this court several times that "In arriving at this amount [of the tax] the legislature takes the gross income of the taxpayer." *Fitch v. Tax Comm.* 201 Wis. 383, 230 N. W. 37; *Wisconsin Ornamental I. & B. Co. v. Tax Comm.* 202 Wis. 355, 229 N. W. 646, 233 N. W. 72. By "gross" income is there meant "total net" income as distinguished from gross receipts. The statement above quoted is made in relation to the normal income tax, but it necessarily applies to any tax that is an income tax as distinguished from other forms of tax. This court has also many times stated that the word "income" used in the constitutional amendment including income as a subject of taxation must be taken in its ordinary sense, and in its ordinary sense income means net income. It covers gains or profits and these cannot be ascertained from any single item of income. Income is defined in reference to income taxation as "the *amount* of wealth which comes to a person within a given period of time." 26 R. C. L. p. 147. "In constitutional and statutory provisions in regard to taxation, . . . income appears to be uniformly construed as meaning net income, as opposed to gross receipts." *Ibid.* p. 149. With like reason it must be so construed as opposed to mere items of income. "Income means the balance of gain over loss." *Ibid.* p. 150. "The income tax is a general tax on all income." *Hudson v. United States* (Ct. Cl.), 12 Fed. Supp. 620, 623. The "amount of wealth" acquired during a given period is not measured by a single item of income; "balance of gain over loss" cannot be based on a single item of income; a tax on a single item of income is not "a general tax on all income." The tax involved is a tax on a specified

item of money received during the year, and as much a property tax as a tax on any other item of personalty received during the year would be, and if taxed at all would have to be taxed under the uniformity clause as other items of taxable personalty are taxed, unless there be a valid ground of distinction between money received as income and other items of personalty. Income from dividends might perhaps be so distinguished from some other items of income as to justify taxing the former and not the others, but I can conceive of no possible basis of classification as between dividends and interest. Whatever of distinction may be made between these two items would require dividends to be exempted rather than interest, for the source of the dividend—corporate earnings—has already been once taxed against the corporation, while the source of interest—the debt on which it is paid—has not been taxed at all. Whatever its nature may be considered to be, the tax assessed against the respondent was in my opinion void under the uniformity clause of the state constitution and the equality clause of the Fourteenth amendment of the constitution of the United States, and the judgment of the circuit court should be affirmed.

I am authorized to state that Mr. Justice NELSON concurs in this opinion.

FAIRCHILD, J. (*dissenting*). I cannot agree with the majority. It seems to me that the limits of the powers conferred upon the legislature by the people have been exceeded in this particular. It has never been considered fair play to impose burdens or penalties by later legislation upon a fellow citizen for an act or transaction which was lawful at the time of its occurrence, and the power to do that was withheld from governmental agencies by the people. The idea is not a new one and was not at the time of the formation of this government. Due process and the law of the land as legal concepts

calculated to protect individuals in their lives and property have been parts of charters of freedom at least since the time of Conrad II (the Salic), who reigned from 1024 to 1039. In Mott's work on Due Process of Law, page 1, he says with reference to an edict of that reign providing that no man be deprived of his fief, but by the laws of the empire and the judgment of his peers:

"Sixteen states of the United States have incorporated a literal translation of a portion of this canon in their fundamental law, and fully as many more use phrases of similar import."

The thirty-ninth section of the Magna Carta reads, Mott, page 3:

"No freeman shall be taken and imprisoned or disseized or exiled or in any way destroyed, nor will we go upon him nor send upon him, except by the lawful judgment of his peers and by the law of the land."

Sec. 6, ch. 15, Laws of 1935, is retroactive. I think it must be conceded that the taxpayer in this case had fully discharged all claims against him and his income under the law of 1933. Since this is so, his income for that year had been earned, taxed, and discharged of all obligations as income, and, under the "pattern of the income tax law," had passed from its status as income into the taxpayer's estate. Its character as income had vanished, and whatever was left of it was no longer income, but was property and a part of the taxpayer's holdings or his estate. It has been decided that the legislature may constitutionally authorize the tax commission to go back several years for the purpose of reassessing incomes and correcting errors and eliminating frauds in previous returns. *State ex rel. Globe Steel Tubes Co. v. Lyons,* 183 Wis. 107, 197 N. W. 578. A legislature would not, of course, be acting under such constitutional power in levying a tax upon income not previously taxed at

all. The power is merely that of collecting sums due since the tax was originally levied. It was held in *State ex rel. Globe Steel Tubes Co. v. Lyons, supra,* that this power included power retroactively to require payment of interest on back taxes from the date when they became due.

The legislature has also been upheld in levying new taxes on income already, but recently, earned. If this power to go back in levying new taxes is unlimited as to time, the tax in question would be valid. Can the legislature on March 14, 1935, levy a new tax upon incomes received during the calendar year 1933, or corresponding fiscal year? On July 13, 1911, the legislature imposed a tax on incomes received during the calendar year 1911. This act was upheld in *Income Tax Cases,* 148 Wis. 456, at p. 514, 134 N. W. 673, 135 N. W. 164. On August 17, 1927, a tax was imposed upon incomes received in the calendar year 1926, and it was held valid in *West v. Tax Comm.* 207 Wis. 557, 242 N. W. 165. In this case the tax on incomes received during 1926 as imposed by the law passed in 1925 was in the midst of the process of assessment when the 1927 law was passed.

*Cooper v. United States,* 280 U. S. 409, 50 Sup. Ct. 164, lays down the test that gains from "prior but recent transactions" may be taxed as income. No case holds, and, with one exception, no case suggests, that the legislature may constitutionally impose a tax upon income received during a year, the taxes for which have been assessed and paid. *Stockdale v. Insurance Companies,* 20 Wall. (87 U. S.) 323, holds good a tax imposed by congress on July 14, 1870, on incomes received during the period from January 1, 1870, to August 1, 1870, but at page 331, the court says:

"The right of congress to have imposed this tax by a new statute, although the measure of it was governed by the income of the past year, cannot be doubted; much less can it be doubted that it could impose such a tax on the income of the current year, though part of that year had elapsed when the

statute was passed. The joint resolution of July 4, 1864, imposed a tax of five per cent upon all income of the previous year, although one tax on it had already been paid, and no one doubted the validity of the tax or attempted to resist it."

Apart from the quoted remark in the *Stockdale Case,* there is no authority for holding that after an income tax on income received during a given year has been assessed and collected, the legislature may constitutionally tax the income received that year to a further extent. Fairness suggests that when a taxpayer's tax on one year's income has been assessed and paid according to the law then in force, the taxpayer is justified in concluding that the matter is closed except for fraud or erroneous assessment. The power of the legislature to provide for the collection of taxes which validly should have been assessed under the existing law, but which were omitted because of fraud or mistake, cannot be doubted, but that power does not support the law here in question. There is no claim of fraud as a reason for re-examining and reassessing this income of 1933, but the legislature in 1935 seeks to reach into a citizen's present estate and lay a tax, called an income tax, on that portion of his present property which was income during 1933, but not thereafter, and by such so-called income tax, compel him to disgorge a sum of money into the common treasury. That he may be able to afford it is no more a sufficient excuse for the usurpation of power than is the great need by the treasury of money. Even though the need be great, constitutional rights should not be invaded. A desire for material to patch a leak does not warrant tearing away structure that prevents inundation.

"When the government through its established agencies interferes with the title to one's property, or with his independent enjoyment of it, and its action is called in question as not in accordance with the law of the land, we are to test its validity by those principles of civil liberty and constitu-

tional protection which have become established in our system of laws, and not generally by rules that pertain to forms of procedure merely." Cooley, Const. Lim. (7th ed.) p. 505.

Civilized countries, enlightened nations have protected and preserved the rights of its citizens, encouraged thrift and the honest accumulation of resources. Laws relating to acts and events to occur in the future are acceptable and may be justified in taxation under the fundamental policy of protecting the rights of all and preserving the integrity of the government, but impositions on closed transactions cannot long be tolerated in a free government. Mr. Justice STORY in the case of *Society for the Propagation of the Gospel v. Wheeler,* Fed. Cas. No. 13,156, 2 Gall. *105, 139, defined a retroactive or, as he called it, a retrospective law:

"Upon principle, every statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already passed, must be deemed retrospective."

I have adverted to the fact that the taxpayer's 1933 income discharged itself of impositions then existing. The majority opinion suggests many subtle differentiations, but these do not appear to me to build a substantial difference between the closed act which is beyond the reach of the legislature and that particular situation of which the taxpayer complains.

I do not feel any practical purpose can be served by further discussion of the point. The feeling that persons who have income from dividends from Wisconsin corporations have escaped taxation long enough may exist, but such escape was purposely permitted by the legislature in the belief that a sufficient tax on that earning had been paid by the corporation. Income from such dividends might be taxed from 1935 on, but for the years that had closed, the legislature was precluded by its own determination that such income was

sufficiently taxed at its source. Citizens acted in reliance upon the assurance of the government that if each did all the existing law required him to do, he need not worry about completed acts.

The objections to the act here outlined, together with those advanced by Mr. Justice FOWLER in the dissent by him and Mr. Justice NELSON, sufficiently disclose the reasons for my not concurring in the majority opinion.