CHURCHILL VS. HERRICK.

EXCISE LAW. CHARTER. (1) *License moneys, under general excise law, payable to counties, in certain cases.* (2) *Charter of Hudson construed.*

1. Under the general excise law of this state (which by its terms applies to *cities* as well as to villages and towns), in counties where the county system of supporting paupers has been adopted, all moneys received for licenses *granted under the provisions of that law* are required to be paid into the *county* treasury, and applied to the payment of the pauper expenses of the county. R. S., ch. 35, sec. 16.

2. Said act confers the power to grant licenses for the sale of "spirituous, strong, ardent or intoxicating liquors or drinks" upon the *aldermen* of cities. The charter of the city of Hudson, as revised in 1867, confers upon the *common council* of that city (composed of the aldermen) the power, by ordinance, resolution or by-laws, to license or regulate "groceries, taverns, lager beer saloons, victualing houses, and all persons vending, dealing in or disposing of spirituous, vinous, malt

or fermented liquors." *Held*, that there is nothing in this provision repugnant to the general excise law, or which manifests any legislative intent to exempt said city from the operations of that law.

3. The original charter of Hudson (in 1857) provided that the city treasurer should " receive all moneys belonging to the city." The revised charter of 1867 provides that the treasurer shall " receive all moneys belonging to the city, *including license money and fines.*" *Held*,

(1) That as the city council has authority to grant licenses for various purposes other than the sale of liquors, this provision does not indicate any legislative intent to give to the city moneys derived from licenses for the latter purpose, but may have been designed merely to show that the *treasurer*, and not the city *clerk* (who issues the licenses), is the proper recipient of the moneys paid for such *other* licenses.

(2) That even if the court could suggest no plausible reason for the change made in the phraseology of the charter, it would not be justified in holding that such change operated to deprive the county of an important source of revenue and bestow it on the city.

APPEAL from the Circuit Court for *St. Croix* County.

A difference having arisen between the city and county as to which is entitled to the moneys received in the city for licenses to sell liquor granted by the city authorities, the treasurers of the city and county respectively submitted the controversy, without action, to the circuit court, pursuant to the statute. Tay. Stats., 1651, § 9. That court held that the county is entitled by law to such license moneys, and gave judgment accordingly; from which the city treasurer appealed to this court.

The following is the agreed case upon which the judgment of the circuit court was rendered:

" During the year 1871, the plaintiff, as treasurer of the city of Hudson, in the county of St. Croix and the state of Wisconsin, received the sum of $660 for liquor licenses granted under the charter of said city. On the 27th of March, 1872, the said plaintiff, supposing that said money was payable by him to the county under the revised statutes of said state, as being money received from liquor licenses, paid the same to

the defendant as county treasurer of said county, after deduct-
ing $13.20 as his commissions.   Before the submission of this
controversy, the plaintiff demanded of the defendant repay-
ment of the amount so paid to him, claiming that the said
money was not payable to the county, but belonged to the
said city ; and the defendant, claiming that the said money did
belong to the county and not to said city, refused, and ever
since has refused, to pay the same back, and now retains the
same.   In the county of St. Croix, at the time of the payment
of said license money and the granting of the licenses for
which the same was paid, the county pauper system had been
adopted.   None of the admissions herein contained are in any
way to affect either party, or to be regarded as made except for
the purpose of this submission of said controversy.   The ques-
tions submitted to the court upon this case are as follows
(without regard to the question as to whether the parties
are the proper parties to the controversy or not), to wit :

*First.*   Were the said moneys payable to the said county, or
did they belong to the said city ?

"*Second.*   Ought the said money to be repaid to the treasurer
of said city ?

" If the court determines that said moneys belong to said
city and ought to be paid to it, judgment to be rendered for
the plaintiff; otherwise for the defendant."

*Geo. Clinton,* for appellant, cited the provisions of the charter
of the city of Hudson (which are also cited in the opinion);
and as to the rule of construction in cases where there is a
repugnance between general and special statutes, he cited *Janes-
ville v. Markoe,* 18 Wis., 350; and *Walworth v. Whitewater,* 17
id., 193.

*L. P. Wetherby,* for respondent, as to the rule of statutory
construction, cited Potter's Dwarris, 154.

LYON, J.   The general excise law of the state (R. S., ch.
35), which, by its terms, is applicable to cities as well as to

villages and towns, provides that in counties where the county system of supporting paupers has been adopted, all moneys received for licenses granted under the provisions of that chapter, to sell spirituous or intoxicating liquors or drinks, shall be paid into the county treasury, and applied solely for the purpose of paying the pauper expenses of such counties. (Sec. 16.) In the county of St. Croix the county system of supporting paupers had been adopted, and was in operation when the license moneys in controversy were received and paid over to the county treasurer. Hence the moneys belong to the county, unless there is some law, enacted since the Revised Statutes, which takes away its right thereto. It is claimed on behalf of the appellant that there are two such enactments which give these moneys to the city of Hudson.

1. The charter of that city, as revised and consolidated in 1867, confers upon the common council of the city the power, by ordinance, resolution or by-laws, to license and regulate "groceries, taverns, lager beer saloons, victualling houses, and all persons vending, dealing in, or disposing of spirituous, vinous, malt or fermented liquors." P. & L. Laws of 1867, ch., 111, sub-ch. IV., sec. 3. It is argued that this provision of the charter is repugnant to the general excise law, and repeals it by implication so far as it relates to the city of Hudson; and that, therefore, the moneys in controversy were not derived from licenses granted under the provisions of the general excise law of the state, but from licenses granted under the above provisions of the city charter.

But we think the charter in this respect is not repugnant to the general law. The latter confers the power to grant licenses for the sale of spirituous, strong, ardent or intoxicating liquors or drinks, upon the aldermen of cities, while the charter provides that the common council (which is composed of the aldermen) may do so *by ordinances, resolutions or by-laws*. That is to say, the general law grants the power, and the charter prescribes the manner in which it may be exercised. After

careful examination of such charter, we are entirely unable to find in it any evidence that the legislature intended thereby to exempt the city of Hudson from the operation of the general excise law of the state.

2. It was provided in the original charter of the city of Hudson, that "The treasurer shall receive all moneys belonging to the city." This refers to the city treasurer. P. & L. Laws of 1857, ch. 275, sub-ch. III., sec. 6. The corresponding provision in the charter of 1867 is as follows: "The treasurer shall receive all moneys belonging to the city, *including license money and fines.*"

It is insisted that this change of phraseology indicates an intention by the legislature to give the license moneys in controversy to the city, and that such is the effect thereof, even though such moneys were paid for licenses granted under the general excise law. We think otherwise. We are acquainted with no rule of statutory construction sufficiently broad to sustain the position of the counsel for the city. His argument is, that unless the last provision of the charter be construed to give these license moneys to the city, the words "including license money and fines" are inoperative and meaningless. This is not necessarily so. The common council has power to grant licenses for a great many purposes other than the sale of liquors, and to charge and collect fees therefor, which would belong to the city. Perhaps also fines imposed by the police justice for the violation of certain city ordinances may belong to the city (unless the provisions of art. X., sec. 2, of the constitution, are in the way). All such licenses would ordinarily, if not necessarily, be issued by the city clerk, who is the custodian of the records of the proceedings of the council and of the corporate seal of the city, and, in the absence of any provision on the subject in the charter, the fees for licenses would doubtless be frequently, perhaps usually, paid to the clerk when he issued the licenses. Now the change in the phraseology of the charter may have been made for the purpose of set-

tling beyond question the right of the city treasurer to the custody of license moneys belonging to the city. The above observations apply also to cases of fines belonging to the city, which have been paid to the police justice, if any fines can belong to the city under the above provision of the constitution.

But were we unable to suggest a plausible reason for the change in the phraseology of the charter in the particular under consideration, it would be difficult, we apprehend, to find a rule of statutory construction which will justify us in holding that such change operates to deprive the county of an important source of revenue, and to bestow it upon the city.

It results from the foregoing views, that the judgment of the circuit court should be affirmed.

*By the Court.* — Judgment affirmed.