The Chicago & Northwestern R'y Co. vs. The Town of Oconto.

VII of the constitution, which provides that the term of office of the judges of inferior courts shall not be longer than that of the judges of the circuit court. In the view we have taken of this case it is not necessary to decide this question. We would, however, suggest that the act might be sustained, as the body of the law provides that the judge of such court shall be elected on the first Tuesday of April next after the passage of the law, and every six years thereafter, whose term of office shall be six years from and after the first day of January next after his election. So far there is no objection to the law; then there is this proviso: "*Provided*, that the term of service of the first judge to be elected shall commence on the first Monday of May next." This proviso might be void, as in conflict with the provision of the constitution above quoted, and yet not affect the body of the act. It could hardly be said that this proviso was so material a part of the act that the legislature would not have passed any part of the act unless the proviso had been embodied therein. If the proviso be in conflict with the constitution, then it may be rejected as void, and the act be read as though it were not contained therein, and the constitutionality of the act so read be sustained.

*By the Court.*— The judgment of the circuit court is affirmed.

---

THE CHICAGO & NORTHWESTERN RAILWAY COMPANY vs. THE TOWN OF OCONTO.

*September 3 — September 21, 1880.*

CONSTITUTIONAL LAW: TOWNS *must be composed of contiguous territory.*

The word " town," as used in the constitution of this state, denotes a civil division composed of *contiguous territory;* and under the power granted to county boards by the statute " to set off, organize, vacate, and change

the boundaries of, the towns in their respective counties " (R. S., sec. 670, subd. 1), such a board cannot make a valid order changing the boundaries of a town so that it shall consist of two separate and detached tracts of land.

APPEAL from the Circuit Court for *Oconto* County.

Action to recover money paid for taxes. Plaintiff appealed from a judgment in favor of the defendant. The case is sufficiently stated in the opinion.

For the appellant there were briefs by *F. J. Lamb*, and oral argument by *Mr. Lamb* and *W. F. Vilas*.

For the respondent there was a brief by *Tracy & Bailey*, and oral argument by *Mr. Tracy:*

1. The legislature, in pursuance of the authority upon that subject expressly given them by the constitution (art. IV, sec. 22), having conferred upon the county boards legislative authority " to set off, organize, vacate, and change the boundaries of, the towns in their respective counties " (R. S. 1849, ch. 10, sec. 28; R. S. 1858, ch. 13, sec. 28; R. S. 1878, sec. 670), and the order here in question being in the form prescribed by the statute, and clearly within the scope of the power delegated by the legislature, it is a valid law, unless unconstitutional. If the legislature have the power to pass such a law, the county board had that power; and the act or order is to be treated by the courts with the same respect as though it had emanated directly from the legislature. *Smith v. Levinus*, 8 N. Y., 472; *State ex rel. Hawes v. Pierce*, 35 Wis., 93, 99. 2. That part of the state constitution relating to the legislature is not to be regarded as a grant of power to that body, but rather as a *limitation* upon its powers; and it is competent for the legislature to exercise *all* legislative power not forbidden by the constitution of the state or of the United States, nor delegated to the general government. *Bushnell v. Beloit*, 10 Wis., 195, 225; *Durkee v. Janesville*, 28 Wis., 464, 469. This court will not declare an act of the legislature void unless it is clearly in violation of the constitution. *Norton v.*

*Rooker*, 1 Pin., 195; *Smith v. Odell*, id., 449; *Dickson v. The State*, 1 Wis., 122; *Smith v. Mariner*, 5 id., 551; *State ex rel. Brayton v. Merriman*, 6 id., 14; *In re Oliver*, 17 id., 681; *Mills v. Charleton*, 29 id., 400; *Plumer v. Supervisors*, 46 id., 163, 186–7. To warrant us in declaring a statute unconstitutional, we should be able to lay our finger upon the part of the constitution violated (*Tyler v. People*, 8 Mich., 333; *State ex rel. v. Main*, 16 Wis., 398, 415; Cooley on Con. Lim., 168, and cases cited in note 3); at least where, as here, the act is not "manifestly contrary to the first principles of civil liberty and natural justice, and to the spirit of our constitution and our laws," so as to come within the principle discussed in *Durkee v. Janesville, supra*. It is claimed that the act or order in question is in violation of those constitutional provisions which relate to the formation of senate and assembly districts. Those provisions, however, merely require that the *districts* shall be composed of contiguous territory; and we cannot infer from this an intention that other political subdivisions of the state shall include only contiguous territory. *Expressio unius exclusio alterius*. It seems impossible to lay the finger on any clause of the constitution which is clearly violated by the order.

[Counsel discussed other questions, which became unimportant in the view taken by this court.]

ORTON, J. This suit is brought to recover from the town of Oconto, the defendant, certain moneys paid under protest for taxes claimed to have been illegally assessed upon the plaintiff's lands, situated in towns 35, 36 and 37, range 16, in Oconto county, by the said town, for the year 1878. Two grounds of recovery were relied upon at the trial: *first*, that the assessment was improperly made; and *second*, that these lands were not subject to assessment and taxation by and in the town of Oconto. The latter ground, being the more important, and, if well taken, fatal to the legality of the assessment, will alone

be considered. To sustain this objection to the assessment, it is claimed that the several orders of the board of supervisors of the county of Oconto, attaching these lands to and making them a part of the town of Oconto, are void, because they are left by such orders in a body of lands separated and detached, and not contiguous to the main body of lands in said town, in violation of the constitution, which, it is claimed, requires towns to be composed and constituted of contiguous territory only.

There was some question on the argument whether the orders of the board of supervisors of Oconto county, organizing and changing the boundaries of the town of Oconto, in fact left these bodies of land so detached; but by an inspection of the orders it is apparent that they are so detached. The order of the board of November 15, 1876, it is conceded, made the town consist of two detached bodies of lands, in the smaller body of which the lands of the appellant in question were situated, and the two bodies separated by the distance of nearly twenty miles of intermediate territory. By the order of March 15, 1877, certain lands, a part of and contiguous to the larger body, and in the direction of the lands in question, were detached from the town of Oconto, and added to and made a part of the towns of Peshtigo and Marinette. By the order of January 12, 1878, certain lands lying contiguous to the lands so detached were added to and made a part of the town of Oconto; but this order failed to embrace the lands so detached, and they were still left in those two other towns. These orders, then, taken together, still leave the two bodies detached, but not by so great a distance. It was unquestionably intended by the last order to cure this defect in the first one, and connect the two bodies together; but by this omission the town still remains subject to the objection of consisting of two detached bodies of territory, the same as by the first order.

We shall not follow the very able arguments of the learned

counsel of the appellant, urging many and weighty reasons of public policy why, if possible, the constitution should be so construed as to require a town to be composed only of contiguous territory, and reasons based upon the constitutional rule of uniformity of town government and of taxation. We shall pass directly, and confine ourselves strictly, to the consideration of the true meaning and proper construction of the term "town," as used in the constitution, with reference only to the defect in the organization or in the changing of the boundaries of the town of Oconto, here urged as making the orders of the board of supervisors void. There are few, if there are any, decisions of courts having a bearing upon this question, directly or remotely; and it must therefore be treated as an original one, and determined somewhat arbitrarily.

The word "town," philologically considered, is a change in the orthography and pronunciation of the Anglo-Saxon word "*tun*," from the verb "*tyan*," meaning to "enclose," and "*tun*," therefore, means an *enclosure*. It was used to denote a garden enclosed by a hedge, or a collection of houses enclosed by a wall. Zell's Popular Encyclopedia, and Johnson's New Universal Encyclopedia. Its general and customary usage in England, as denoting a collection of houses or hamlet between a village or city, or its stricter legal or civil meaning as denoting a civil corporation of larger territory, which might include a village or city, are somewhat foreign to the use of the word, and the civil and territorial subdivision or organization which it is used to signify, in this country. Its first use in this country was to define the original or primary civil or governmental organizations of the early colonists of New England, who knew by bitter experience the oppressive tyranny of imperial law, and who desired, above all things, to be governed not only by laws made by themselves in primary assembly, but having a limited and local application to their wants in small and independent communities. They were considered and adopted by those alone who knew their fitness and adap-

tation to their wants, and they received the general assent. This attachment to local law and local government, which then prevailed and still prevails in this country, was the producing cause of the organization of the towns of the New England colonies, which had exclusive control of their local affairs. Each town had clearly-defined territorial limits or boundary, so restricted as to fully secure to each citizen the advantages of a local or home government, and not so extended as to defeat or lessen them.

The nature and uses of this form of local government are fully expressed by one of the earliest *acts of the Massachusetts colony, in general court in* 1636, viz.: "Inasmuch as particular towns have many things which concern only themselves and the ordering of their own affairs and disposing of their own towns, it is ordered that the freemen of every town, or the major part of them, shall only have power to dispose of their own lands and woods, with all the privileges and appurtenances, not repugnant to the laws and orders of the general court." Local Law of Mass. and Conn., by Fowler, 10-20. · It can be seen that in the very nature and uses of such a local government the town must be, *first*, of limited territorial extent; *second*, of compact and contiguous territory; *third*, its boundary must be clearly defined and continuous; and, *fourth*, it should embrace within its government only those having a unity or similarity of interests. In New England, towns having been the first local civil governments and antecedent to the formation of counties, the counties were made by a consolidation of its towns. In the western states, however, when an organic law is first made for the government of the whole territory, or a constitution is formed for the whole state, counties are formed first, and towns within them afterwards; but the original idea and meaning of the town remain the same, and that is, "a subdivision of a county," as defined in Johnson's New Universal Encyclopedia, and "subdivision of a county as a parish is a part or subdivision of a diocese." "In popular

usage in America, the whole territory within *certain limits.*"
Imperial Dictionary.

Webster defines town as "an enclosure;" "the whole territory within certain limits;" and the word "parish" as "a *district* of certain limits, which cannot be altered without legal enactment;" and the word "district" as "a *defined portion* of the state."

In Abbott's Law Dictionary it is defined, "a walled place or borough." Finch, 80. "Townships are incorporated, not as cities and villages are, for their own benefit and by their assent, but like counties, as mere civil divisions of the state." *Waltham v. Kemper*, 55 Ill., 346. "The several towns of this state are corporations for certain very limited purposes: . . . for the conservation of highways, . . . relief of the poor, . . . the assessment and collection of taxes, etc. The several towns are political divisions, organized for the *convenient* exercise of portions of the political power of the state." *Lorillard v. The Town of Monroe*, 11 N. Y., 392. All of these terms defining "town" are strongly expressive of compactness, adjacency and contiguity, such as "enclosure," "*whole* territory within certain *limits*," "defined portion of the state," and "a subdivision of a county." A town, in its name and uses, conveys the very idea of locality, vicinity, vicinage and convenience. A town is a subdivision, in the singular; not subdivisions, or many subdivisions, in the plural. Aside from these definitions, all of which appear to be conclusive of the question, there is much force in the general and almost invariable usage, in this country at least, in the organization of towns and counties, as in precincts, districts, cities and villages, in forming them of adjacent and contiguous territory. If there had been many instances, and I might say any, of the organization of a town constituted of separate, detached and remote bodies of territory, the evils would have been so manifest and numerous that cases of complaint would have found their way into the courts and reports; but by considerable

searching I have been unable to find a single case directly involving this question.

To so construe the constitution as to authorize the board of supervisors of a county to organize or change the boundaries of a town so that it would be composed of separate, detached and non-contiguous territory, would most unquestionably restrict the sovereign power of the legislature in the organization of assembly districts "consisting of contiguous territory, and bounded by county, precinct, town or ward lines." Article IV, § 4, Const. The term precinct, as used in this section, has reference only to certain districts having similar functions to those of towns, as in Grant county and perhaps other places, in territorial times, and which passed away upon the formation of the first legislative districts, after the admission of the state; and the term is no longer used except, perhaps, occasionally, interchangeably with election districts. By section 5 of the same article, senate districts are required to be of like "convenient contiguous territory;" and the power of the legislature would be alike restricted in their formation if the territory of towns need not be contiguous.

Supported by these authorities, as well as most obvious and numerous reasons of public policy, practical convenience, and respecting the public welfare, we decide that a town must consist of contiguous territory, and that the orders of the board of supervisors of Oconto county are void and of no effect; and that the assessment complained of is also void, and the taxes so paid by the appellant under protest are illegal and void, and may be recovered in this action.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.