GREEN COUNTY vs. THE VILLAGE OF MONROE.

*April 11 — May 10, 1882.*

*Village charter: License moneys: Implied repeal of charter provision by general act.*

1. Ch. 179, Laws of 1874, was a complete revision of the law relating to excise and the disposition of moneys arising from licenses for the sale of intoxicating liquors in this state, and, by necessary implication, repealed all former legislation on the subject not therein re-enacted.

Green County vs. The Village of Monroe.

2. Under secs. 18 and 23 of that act, as now found in sec. 1562, R. S., the "county system of supporting the poor" having been adopted by the plaintiff county, all license moneys received by the defendant village must be paid into the county treasury semi-annually, notwithstanding any contrary provisions found in the village charter, enacted prior to 1874.

APPEAL from the Circuit Court for *Green* County.

This action is brought by the county to recover from the village $2,850, collected by the village during the years 1879 and 1880, for licenses granted during those years to sundry persons, allowing them to sell intoxicating liquors in the village. The complaint, in effect, alleged that the county system of supporting the poor, and abolishing all distinctions between county poor and town poor in the county, had been adopted by the county and continued in force ever since 1860; that the expense of maintaining all the poor in the county had become and was a county charge; that the resolution of such adoption, duly certified by the clerk of the board, had been filed in the register's office; and that the village had never provided for the support of the poor therein, nor paid any of said license moneys to the treasurer of the town of Monroe, in which the village was situated, nor to the county treasurer, as required by the statute, but had applied the same in defraying the expenses of the village. The answer admits all the allegations of the complaint, except that such license moneys ought of right and according to the statute to have been paid to the county treasurer, and by way of avoidance pleads the resolution of the board of trustees of the village for each of said years, appropriating said license moneys to the repair and grading of the public streets and alleys, and the building and repairing of sidewalks, gutters, culverts, and bridges within the village, and the payment of the night-watch of the village; that, under its charter (ch. 48, P. & L. Laws of 1858, and ch. 140, P. & L. Laws of 1859), the village

was authorized to grant the licenses in question, and its treasurer was required to collect and hold the moneys thereon, and not to pay out the same except upon the written order of the board of trustees, signed by the president and countersigned by the clerk; and that ever since the organization of the village, in 1858, similar licenses had been granted each year, and the license moneys each year collected, held, appropriated and used in the same manner as in the years 1879 and 1880, without the right to so collect, etc., being questioned or tested in any public or private suit or action. The county demurred to the answer, on the ground that it did not state facts sufficient to constitute a defense to the cause of action stated in the complaint; and from an order sustaining the demurrer, the defendant village appealed.

*B. Dunwiddie*, for the appellant.

*P. J. Clawson*, for the respondent.

CASSODAY, J. In *Churchill v. Herick*, 32 Wis., 357, it was held that ch. 35, R. S. 1858, which constituted the general excise law at the time, by its terms applied to cities as well as to villages and towns, and that all moneys received for licenses granted under the provisions of that law, in counties where the county system of supporting paupers had been adopted, were required, by section 16 of that chapter, to be paid into the county treasury and applied to the payment of the pauper expenses of the county. Ch. 223, Laws of 1860, took the counties of Dodge, Jefferson, Columbia, Winnebago and Brown out from its provisions; and ch. 176, Laws of 1863, took out the county of Fond du Lac. Ch. 255, Laws of 1873, by its terms took "the several towns, cities and villages of Green and Green Lake counties" out of the general statute, and provided that all such license moneys should "be held and disposed of in the same manner as the general town, city and village funds are now [were then] disposed of by law, any law to the contrary

notwithstanding." The next year an act was passed "to consolidate and codify the various laws of our state relating to excise and the sale of intoxicating liquors." Ch. 179, Laws of 1874. The 23d section of that chapter made it applicable to the whole state and every part thereof, with the proviso that sections 1 and 2, in so far as they fixed the term for which any license should be granted, should not in any way interfere with or change the provisions of any village or city charter in that behalf, and also with a proviso giving to the board of supervisors, common council, and village board of trustees, certain discretionary powers in disposing of the license money by ordinance or resolution in a different mode. The 18th section of ch. 179, Laws of 1874, was a substantial re-enactment of sec. 16, ch. 35, R. S. 1858, with the omission of the subsequent amendments taking certain counties out from its provisions. The act of 1874 was a complete revision of the whole subject, and by necessary implication repealed all former legislation as to the disposition of license moneys, not therein re-enacted. *President, etc., of the Village of Platteville v. McKernan*, 54 Wis., 487. So ch. 66, R. S., is a complete revision of the law of excise and the disposition of license moneys, and hence repeals all former enactments not therein re-enacted. Sec. 1562, R. S., contains what was previously contained in sec. 18 and a part of sec. 23 of ch. 179, Laws of 1874. See Revisers' Notes.

The proviso contained in the 23d section, to the effect that it should " not interfere with or change the provisions of any village or city charter in respect to the *term* of license," is preserved in sec. 1548, R. S. This of itself, as well as other portions of ch. 66, R. S., clearly shows that, to a certain extent, it was intended to repeal city and village charters, and adopt a uniform law for the whole state. This appeal, therefore, must depend upon the construction to be given to sec. 1562, R. S., which reads as follows: "All moneys derived from such license shall be kept separate

from other money by the town, village and city treasurers, and be applied solely to defraying the expense of the support of the poor therein, so far as it is necessary for that purpose, and the residue shall go to the general fund; *and in counties where the county system of supporting the poor shall have been adopted, such moneys shall be paid by such town, village or city treasurers into the county treasury semi-annually on receipt thereof, and shall, so far as necessary, be applied to defraying the expense of the support of the poor of such county.* Such supervisors, trustees or common council may, by ordinance or resolution, provide for a different way of disposing of such license moneys, if they deem proper so to do; but all such license moneys received by any village, which, under its charter, does not provide for the support of the poor therein, shall be paid to the town treasurer of the town in which such village is situated." The clause in italics, by its very terms, has no application except " in counties where the county system of supporting the poor shall have been adopted," and in such counties it is applicable, and must be enforced. In such counties all such moneys must be paid by the several town, village and city treasurers therein, into the county treasury semi-annually, on receipt thereof, and the same shall, so far as necessary, be applied to defraying the expense of the support of the poor of such county; but no part of such moneys in such counties can be legally applied by any town, village or city treasurer to defraying the expense of the support of the poor therein, much less for any other purpose. But, in counties where the county system of supporting the poor has not been adopted, all such moneys must be applied by the town, village and city treasurers solely to defraying the expense of the support of the poor therein, so far as is necessary for that purpose, and the residue shall go to the general fund of such town, village or city; except that, in counties where the county system of supporting the poor has not been adopted, the supervisors of towns, the

trustees of villages and the common council of cities may, by ordinance or resolution, provide for a different way of disposing of such license moneys, if they deem proper so to do; but in case any village in such county, not having adopted the county system of supporting the poor under its charter, does not provide for the support of the poor therein, then all such money collected in such village shall be paid to the town treasurer of the town in which such village is situated. The words "such supervisors," as used in the section, clearly relate to the class of supervisors previously referred to in the chapter, as in secs. 1553, 1554, 1555, 1558, in each of which it clearly refers to supervisors of the town as members of the town board, and not to supervisors of the county. This being so, the county supervisors, in counties which have adopted the county system of supporting the poor, have no legal right, by ordinance or resolution or otherwise, to divert such license moneys, but must, "so far as necessary," apply the same to the defraying of the expenses of supporting the poor of such county. Here it is admitted by the record that the county system of supporting the poor had, prior to 1879, been adopted in the county of Green, in which the village of Monroe was situated; and hence the section of the statute in question expressly required the treasurer of that village to pay all such license moneys into the county treasury, semi-annually, on receipt thereof. As we have already observed, all enactments in village or city charters, or elsewhere, providing for a different disposition of such license moneys, were repealed by the late revisions; and hence, under the statute, the duty to pay the license moneys in question into the county treasury, as stated, was imperative.

For the reasons given the order of the circuit court must be affirmed.

*By the Court.*— Order affirmed.