Town of Greenfield, Appellant, vs. City of Milwaukee, Respondent.

*September 13—October 9, 1956.*

For the appellant there was a brief by *William H. Bowman,* attorney, and *Gauer, Buer & Murray* of counsel, all of Milwaukee, and oral argument by *Samuel P. Murray* and *Robert J. Buer.*

For the respondent there was a brief by *Walter J. Mattison,* city attorney, and *Richard F. Maruszewski* and *John F. Cook,* assistant city attorneys, and oral argument by *Mr. Maruszewski* and *Mr. Cook.*

BROWN, J.   Sec. 62.07, Stats., among other things, provides that a petition for annexation presented to the council of the annexing municipality must be signed by a majority of the electors in the territory whose annexation is sought. The town contends the trial court's finding of fact that the petition was signed by a sufficient number of electors is contrary to the great weight and clear preponderance of the evidence.

If a finding of the trial court is not contrary to the great weight and clear preponderance of the evidence it must be sustained. *Gordon v. Gordon* (1955), 270 Wis. 332, 339, 71 N. W. (2d) 386; *Stikl v. DeBoth* (1950), 258 Wis. 17, 44

N. W. (2d) 542. The petition in question was signed by a Mr. and Mrs. Drewa. Afterwards, and before the council acted, they signed a second petition withdrawing their signatures, and still later they signed a third one reinstating them. If the last document was signed and filed with the council before the council acted, November 18, 1954, the petition for annexation bore the signatures of the required number of electors; if the Drewas signed later, it did not, and the city ordinance of annexation adopted in response to the petition is invalid. The evidence of the time of such signing conflicted. Mrs. Drewa was sure that she and her husband had signed the paper reinstating their signatures at some time after November 18, 1954, which was a Thursday. This fact was fixed in her memory by her recollection that they signed on a Saturday night, which was her husband's night for a bath. Mr. Drewa had no such vivid recollection; but it does appear that they signed the withdrawal of signatures on November 13, 1954. That was a Saturday in fact, and one on which he remembered bathing. There is thus a possibility that by an error of memory Mrs. Drewa identified her husband's sanitary rites with the wrong petition. For the city, the person who circulated the reinstatement petition testified positively that Mr. and Mrs. Drewa signed it on the morning of November 18th; the date, November 18, 1954, appears in their own handwriting after their signatures; and the circulator testified that he filed this paper on that day before the council action and the clerk's stamp corroborates it, although the town chairman testified that it was not in the file a few days later. With these conflicts we cannot hold that the trial court's finding,—that the reinstatement of these signatures was executed and filed before the passage of the ordinance of annexation,—is contrary to the great weight and clear preponderance of the evidence.

Appellant submits that by the annexation, which puts portions of a public highway within the city, residents of the

town have been deprived of highway frontage and of the governmental services for which the highway is used. Its brief cites no evidence in support of this contention. The location of the highway is not changed and it remains public. The conclusion that town residents have been injured by the transfer of the road to another municipal jurisdiction is a mere conclusion which we cannot accept as a fact. It might as well be concluded that the change will benefit them. We do not think this contention has merit.

The town states that the new boundaries isolate a heavily populated section of the town. The trial court found, and the map shows, that the area in question is not severed but is joined to the remainder of the town by a corridor 30 feet wide and 630 feet long. Similar corridors connecting different parts of a town have been considered in *Lake v. Milwaukee* (1949), 255 Wis. 419, 39 N. W. (2d) 376, and *In re Village of Elm Grove* (1954), 267 Wis. 157, 64 N. W. (2d) 874, and were held not to be fatal to the annexation and incorporation of the respective tracts. In the instant case the trial court found:

"12. That the township is not severed by virtue of this annexation nor is any portion of the township isolated by virtue of said annexation; that the township remains an integrity upon said annexation; and that the annexation of said territory is reasonable."

This finding is not against the great weight and clear preponderance of the evidence and we must sustain it.

The town insists that the ordinance annexes to the city agricultural and rural territory not suitable nor adaptable to the city's uses or needs. The trial court found as follows:

"11. That the territory annexed is suitable and practicable for annexation and meets the defendant city's uses or needs and that the territory is adaptable to annexation."

We find no evidence in support of the town's assertion. On the contrary, the town has just complained that the alleged isolated area in the immediate neighborhood is heavily populated. The trial court might well doubt that the character of the area was such as to render it legally unfit to be annexed. Its finding here, too, must be sustained.

A previous effort to annex a portion of this territory to the city was commenced earlier in 1954 by posting notices, after which, and before the present attempt, the council voted indefinite postponement. Under Robert's Rules of Order, the leading work on parliamentary procedure, indefinite postponement is the equivalent of a termination or defeat of a proposal, but even if the former proceeding had not been ended in this manner it would not prevent the present attempt. The two proceedings seek the same end and there is no conflict between different jurisdictions whereby one jurisdiction by an earlier start has priority over the attempt of a second jurisdiction. In *Milwaukee v. Sewerage Comm.* (1954), 268 Wis. 342, 67 N. W. (2d) 624, two projects were pending, one to annex territory of the town of Lake to the city and the other to consolidate this town territory with that of the city. We held that the pending annexation measure did not bar the consolidation effort since the result to be accomplished was the same and there was no conflict between municipal jurisdictions. In that case the desired end was approached in two different ways. Presently only one method,—annexation,—is used and if there was no bar to the second proceeding in the *Sewerage Comm. Case* there is even less reason for finding that the second annexation attempt now is prevented by reason of the first one, even if it could be held that the first is still pending.

Appellant refers to sec. 3, art. IV of the Wisconsin constitution which directs the legislature to reapportion legislative districts after each federal census. It then calls attention to sec. 62.07, Stats., which provides the procedure to be

followed in annexing territory to municipalities and to sec. 4.04 (2), which declares that when territory having a population of more than 5,000 is annexed to a city it shall become a part of the assembly or senatorial district of which the ward in which it is incorporated by annexation forms a part. Appellant then argues that the constitution has been violated because by the ordinance of annexation the city has changed the area from the legislative district in which the town lies to the district in which the city ward lies and such a change is a function of the legislature alone and cannot be delegated. To us there seem to be several answers to this proposition of which the most pertinent at present is that even if the constitutional point is arguable by anyone the town, as a town, is not concerned with the boundaries of assembly and senatorial districts nor aggrieved by changes in them and, not being aggrieved, cannot raise constitutional questions concerning them. *Appeal of Van Dyke* (1935), 217 Wis. 528, 259 N. W. 700; *Joint School Dist. v. Boyd* (1955), 270 Wis. 222, 70 N. W. (2d) 630. Another immediate answer to the town's argument is that the effect of its argument, if good, would only render void the changed boundaries of the legislative districts. It would not invalidate the annexation, which is the question now before us.

Upon the whole record we conclude that the judgment of the learned trial court should be affirmed.

*By the Court.*—Judgment affirmed.