TOWN OF BLOOMING GROVE, Respondent, vs. CITY OF MADISON, Appellant.

*February 8—March 5, 1957.*

For the appellant there were briefs by *Harold E. Hanson,* city attorney, *Leon E. Isaksen,* special counsel, attorneys, and *Thomas, Orr, Isaksen & Werner* and *Trayton L. Lathrop,* all of Madison of counsel, and oral argument by *Mr. Hanson, Mr. Leon E. Isaksen,* and *Mr. Lathrop.*

For the respondent there was a brief and oral argument by *Earl I. Cooper,* attorney, and *William J. P. Aberg* and *Paul C. Gartzke* of counsel, all of Madison.

FAIRCHILD, J.   Appellant raises a number of objections to the right of the town to bring this action.   They are the same objections which appellant raised in *Blooming Grove v. Madison,* ante, p. 328, 81 N. W. (2d) 713, and are disposed of adversely to appellant in that decision.

It has been frequently assumed that an annexation would be invalid if it caused the portion of a town not previously included within a village or city to be divided into two or more parts.   The circuit court so held.

No provision of the constitution nor applicable statutes expressly forbid such division.   The authority most frequently cited on the point is *Chicago & N. W. R. Co. v. Oconto,* 50 Wis. 189, 6 N. W. 607.   In that case this court considered orders of the board of supervisors of Oconto county organizing and changing the boundaries of the town of Oconto so that it would consist of two areas separated by parts of other towns.   It was decided that by reason of the

connotations of the word "town," as well as reasons of public policy, practical convenience, and public welfare, a town must consist of contiguous territory and the orders organizing and changing the boundaries of Oconto were void. The decision appears to be an interpretation of the constitution.

The *Oconto Case* deals directly with the original organization of a town, but does not necessarily decide whether once a town has been validly organized it is improper for the boundaries of cities and villages to be so drawn that incorporated territory shall completely separate one unincorporated portion of a town from another unincorporated portion of the same town. Counsel have assumed such impropriety, and so, probably, has this court, in three cases. In each of these cases, while the matter of division was raised, the portions of the town were in fact connected by slim "corridors" of unincorporated town land so that it was never necessary to decide whether the annexation or incorporation would have been valid if the corridor had not existed. *Lake v. Milwaukee,* 255 Wis. 419, 39 N. W. (2d) 376; *In re Village of Elm Grove,* 267 Wis. 157, 64 N. W. (2d) 874; *Greenfield v. Milwaukee,* 273 Wis. 484, 78 N. W. (2d) 909.

The only decision called to our attention in which this court has said that division of a town by annexation would be improper was *Milwaukee v. Sewerage Comm.* 268 Wis. 342, 359, 67 N. W. (2d) 624. One question in the case was whether a particular annexation posting had been valid. The trial court had determined the posting to be void upon its face upon four grounds. There was an issue of fact as to one, but this court stated that there were three other sufficient grounds in any event. One of these remaining grounds was "isolation" of part of the town, but it is evident that a decision of whether or not such isolation was improper was not essential in view of the remaining grounds.

An assistant city attorney of the city of Milwaukee who is thoroughly familiar with annexation matters expressed the

opinion that a town cannot be divided into separate parcels by annexation. Maruszewski, Legal Aspects of Annexation, 1952 Wisconsin Law Review, 628.

We would be persuaded to give great weight to a rule which has been so widely assumed except for a matter of legislative construction which has been brought to our attention.

Only eight years after the adoption of our constitution, the legislature incorporated the city of Madison by ch. 75, Laws of 1856. That act interposed the incorporated area of Madison between portions of the town of Madison. In fact there were five such separated portions of the town. As a result of subsequent annexations to Madison, there was in 1954 a total of nine such separated portions of the town of Madison and three unincorporated areas of the town of Burke which are separated from each other.

Appellant argues that annexation and incorporation do not change town boundaries and that all parts of a town therefore remain contiguous to one another even though some of them are also parts of cities or villages. Texts and decisions from other states are cited supporting the concept of a town as a political subdivision of a county the existence and boundaries of which remain unaffected by the incorporation of cities and villages just as is the case with counties. 2 McQuillin, Mun. Corp. (3d ed.), pp. 271, 272, sec. 7.08; 52 Am. Jur., Towns and Townships, p. 477, sec. 7.

Some weight is given to this proposition by statements in the separate opinion of Mr. Chief Justice Lyon in *State ex rel. Attorney General v. Cunningham*, 81 Wis. 440, 521, 51 N. W. 724. Sec. 4, art. IV of the Wisconsin constitution provides that assembly districts shall be bounded by county, precinct, town, or ward lines. Mr. Chief Justice Lyon explained that "the lines of cities and villages are not specified as such boundaries, because it would be necessary to disregard them and dismember such municipalities in order to prevent

the dismemberment of counties and towns." He also stated that when the constitution was adopted there were villages with town lines passing through and dividing them into two parts. In sec. 12, art. XIV of the original constitution there appeared the first apportionment of legislative districts. No villages were mentioned therein. Although the village of Madison was then in existence, only towns were mentioned in describing the district in which the village of Madison was located. Since the earliest days, however, apportionment acts of the legislature have listed villages as well as wards, cities, and towns when dividing counties into assembly districts.

Appellant has cited a number of statutes and cases in which there is language referring to villages as being within a town. An example is sec. 61.187 (2), Stats., providing that in the event of dissolution of a village, ". . . the territory embraced in the village shall revert to and become a part of the town or towns from which it was taken or in which it is then located. . . ."

Evidently under early statutes, towns might continue to perform certain functions within villages incorporated within them. In *Green County v. Monroe*, 55 Wis. 175, 180, 12 N. W. 472, the court held that in case the county had not adopted the county system of supporting the poor, liquor-license money collected in a village "shall be paid to the town treasurer of the town in which such village is situated."

It can be said that town boundaries have at least potential significance notwithstanding incorporation and annexation within them, or stretching across such boundaries. It is clear, however, that most, if not all, powers and duties of town government are restricted to areas outside of incorporated areas.

Relying largely upon the early construction of the constitution by the legislature in incorporating the city of Madison and thereby separating portions of the town, and also

upon the fact that the legislature preserves for a few limited purposes a relationship between incorporated areas and the towns within the borders of which they lie, we reach the conclusion that the constitution does not prohibit the annexation or incorporation of territory within a town, once validly organized, in such a way as to divide the unincorporated area of the town into separate parts. The statute .regulating annexation, sec. 62.07, does not express nor imply such prohibition.

Sec. 4.04 (2), Stats., provides that under certain conditions territory annexed to a city becomes a part of the assembly district of which the ward in which it is incorporated forms a part. The fifteenth ward of Madison is part of the first assembly district and the town of Blooming Grove is part of the fourth. Questions as to the validity or effect of sec. 4.04 and other questions which may arise concerning the composition of the assembly and senate districts are not now before the court. The town cannot raise such questions. *Greenfield v. Milwaukee,* 273 Wis. 484, 78 N. W. (2d) 909.

We therefore conclude that the judgment entered upon respondent's motion for summary judgment should be reversed.

The circuit court denied appellant's motion for summary judgment, evidently for the sole reason that the matter must be decided in favor of respondent upon the issues of law relating to apportionment and division of the town. We reverse the denial, but only to leave the appellant's motion open for consideration upon the merits. We express no opinion on issues raised by the pleadings other than those relating to apportionment and division of the town. Appellant's brief asserts that an issue has been raised by respondent as to sufficiency of the signatures on the petition at the time it was filed; that this issue is raised too late. This question also has never been considered by the circuit court and we express no opinion.

*By the Court.*—Judgment and order reversed, cause remanded for further proceedings according to law.

BROADFOOT, J. (*dissenting*). I cannot agree with the majority opinion in this case which holds that a town can be dismembered by annexation proceedings. The word "town" has different meanings in different parts of the country. In the colonies, and later in the New England states, a town was a large unit of local government. In fact towns there constituted the original units of local government before counties were formed. In our territorial legislature and in our constitutional convention there were many people who had come from eastern states and without a doubt they brought with them some idea of the town as it existed there. However, in Wisconsin counties were set up as the original units of local government and the counties were later divided into towns.

The authorities cited in the majority opinion are all tinged by the early idea, but early in our history the town was created not only as a political division but as a territorial division as an agency of the state for the exercise of portions of the political power of the state. At one time villages and cities were referred to as "municipal corporations" while towns and counties were referred to as "quasi-municipal corporations." That distinction has largely disappeared and it is now customary to refer to all of them as "municipalities." Each town in Wisconsin is by statute a body corporate with many statutory privileges and duties. To hold that there can be two municipalities occupying the same territory with like authority and privileges will, as a practical matter, lead to public confusion and disorder rather than to the promotion of good government. Certainly the city of Madison and the town of Blooming Grove cannot both govern the same territory.

In the absence of statute, it was held in *Chicago & N. W. R. Co. v. Oconto,* 50 Wis. 189, 6 N. W. 607, that a town must be of limited territorial extent, compact and contiguous, and its boundaries clearly defined. The appellants contend that this applies only in the case of the original organization of a town. I cannot agree. The same logic and practical application of the statutes require that a town be compact and not split into parcels if it is to efficiently operate as a political division of the state. The idea has been prevalent for many years that a town as such a political division could not be dismembered by annexation proceedings. No cases can be cited where it has been permitted. For practical considerations I would not permit it now.

I am authorized to state that Mr. Justice STEINLE joins in this dissent.