Herbert, J.
The discretionary power legislatively vested in Boards of County Commissioners in annexation matters has long been recognized in the decisions of this court. A little over 100 years ago in the case of Powers v. County Commrs. of Wood County, 8 Ohio St., 285, Swan, J., stated in the opinion:
“The extent and limits of a municipal corporation depend upon a variety of questions, both of a public and local nature; and among them is involved, sometimes, the private interest of citizens residing near towns who enjoy the benefits without paying the expenses of public improvements; and, on the other hand, the corporate limits of towns are sometimes extended simply to extend unjustly the area of assessments and taxation. The county commissioners are, perhaps, as proper public officers as any other to decide upon the public policy and conflicting interests involved in the determination of the extent and limits of municipal corporations. It is, however, enough to say, that the law has devolved it upon them.”
This fundamental principle was restated by this court in the case of State, ex rel. Loofbourroio, Solr., v. Board of County Commrs. of Franklin County, 167 Ohio St., 156, 146 N. E. (2d), 721, wherein this court held in the second paragraph of the syllabus that “the commissioners are still required to exercise their discretion to either allow or deny the petition for annexation.” The Loofbourrow case involved an annexation proceeding initiated by the council of a municipality followed by an election among the electors resident in the affected territory and then a referral to the Board of County Commissioners for final action. In that case, the writer dissented solely because of the belief that in that class of annexation proceedings, where the legislative arm of the municipality initiated the proposal by ordinance and a majority of the voters in the affected territory voted in *429 ■favor of the annexation, the provision vesting discretion in the Board of County Commissioners was no longer applicable.
In the instant cases, however, there can be no doubt that the discretionary power of the county commissioners is complete, as will appear in the decisions and statutes cited and quoted from herein. The major issue in these eases relates to the sufficiency of signatures to a petition for annexation and the period of time within which a person signing such a petition may withdraw his signature therefrom.
The assignment of error in .ease No. 35653 (Franklin County) is that the Court of Appeals “held contrary to law in affirming the judgment * * * and in thereby determining that the petition signatures could not be withdrawn. ’ ’
In cases Nos. 35763, 35785 and 35786 (Hamilton County), claims are made that the petition was defective in that the description of the territory was inaccurate, and in that, under the provisions of the petition, the agent of the petitioners was given power to amend the territory proposed for annexation; that Sections 709.02 through 709.09, Revised Code, are unconstitutional in that the petition is to be signed by a majority of the “adult freeholders residing in such territory” thus excluding corporations and nonresident owners from participation in such proceedings; and, finally, that the petition for annexation did not contain signatures of a majority of the adult freeholders residing in the territory.
First, we will consider the points raised -in the Hamilton County cases other than the question of sufficiency of signatures. The contention that the description of the territory sought to be annexed was inaccurate raises an evidentiary question which was disposed of by the trial court and the judgment affirmed by the Court of Appeals. As to the provision in the petition for annexation authorizing the agent “in his discretion, to amend the territory proposed for annexation by omitting any part of such territory, if such amendment shall seem to him to be desirable and in the best interests of the signers generally,” such provision does not per se invalidate the petition. As will be shown in the statutes quoted below, no amendment to such a *430 petition can be made, after official action, except by leave of the Board of County Commissioners and any such amendments made accordingly would be within the discretionary power of the board. The records do not disclose any effort on the part of the agent to amend the description of the territory involved, and this contention, therefore, has no substance.
Appellants also contend that Sections 709.02 through 709.09, Revised Code, are unconstitutional because of the exclusion of corporations and nonresident owners from the right to sign or oppose an annexation petition, and that such statutes therefore deny “all plaintiffs herein equal protection of the laws and due process of law.”
This would appear to be the first time that a challenge to the constitutionality of these sections has ever been raised on these grounds. Even the appellants in the Cincinnati cases do not seriously insist upon their contention with respect to corporations. As to nonresident freeholders, we know of no case upholding their right to participate in such a proceeding. Neither the trial court nor the Court of Appeals expressly passed upon the constitutionality question in their decisions but impliedly upheld the validity of these sections.
Going back to the Powers case, supra, the following language from the opinion of Swan, J., is pertinent:
“The plaintiff claims that his lands cannot be annexed to the town of Perrysburg without his assent, or, at least, without permitting him to vote on the question.
“There is no constitutional provision upon this subject. The statute relating to a vote by the citizens of a municipal corporation, upon the question whether contiguous territory shall be annexed to the town, is simply for the purpose of determining whether an application shall be made to the county commissioners to annex the territory; and they, finally, after hearing the parties in interest, decide upon the public policy of making the annexation. No right of property is involved or determined by the vote contemplated by the statute.
C ( # * *
“The county commissioners, in the exercise of this author *431 ity, are determining a question of public policy, affecting, it is true, incidentally, private interests; but not determining, like courts, tbe specific private rights of individuals, any more than the annexation of contiguous territory to school districts, townships or counties, is a judicial act, in the sense in which the Constitution vests in courts exclusive judicial powers.” See, also, Blanchard, Treas., v. Bissell, 11 Ohio St., 96; State, ex rel., v. City of Cincinnati, 52 Ohio St., 419, 40 N. E., 508, 27 L. R. A., 737.
“A statute annexing, or authorizing the annexation of, territory to a municipal corporation has been held not to deprive the people in the territory affected of any constitutional right of local self-government. Nor does it in any way violate the rights of the individual residents of the affected territory either as citizens or as taxpayers.” 37 American Jurisprudence, 646, Section 29.
In line with the above authorities, nonresident voters certainly cannot claim a violation of their constitutional rights in an annexation proceeding. We, therefore, support the lower courts and hold that Sections 709.02 through 709.09, Eevised Code, are not violative, on either of the grounds raised by appellants here, of their constitutional guaranties of equal protection of the law and due process.
Finally, we come to the question of withdrawals of signatures. The appellants in all cases contend that it was the duty of the Boards of County Commissioners to permit withdrawals of signatures until announcement of the final order approving or denying annexation. Annexation of territory to a municipality may be initiated by petition of residents of such territory as provided in Section 709.02 et seq., Eevised Code. The pertinent parts of these sections are as follows:
Section 709.02, Eevised Code:
“The inhabitants residing on territory adjacent to a municipal corporation may, at their option, cause such territory to be annexed thereto, in the manner provided by Sections 709.03 to 709.11, inclusive, of the Eevised Code. Application for such annexation shall be by petition, addressed to the Board *432 of County Commissioners of the county in which the territory is located, signed by a majority of the adult freeholders residing in such territory. Such petition shall contain the name of a person authorized to act as the agent of the petitioners in securing such annexation, a full description of the territory, and shall be accompanied by an accurate map or plat of the territory sought to be annexed. ’ ’
Section 709.03, Revised Code:
“The petition required by Section 709.02 of the Revised Code shall be presented to the Board of County Commissioners at a regular session thereof, and when so presented the same proceedings shall be had as far as applicable, and the same .duties in respect thereto shall be performed by the board and other officers as are required in case of an application to be organized into a village under Sections 707.01 to 707.30, inclusive, of the Revised Code. The final transcript of the board and the accompanying map or plat and petition shall be deposited with the auditor or clerk of the municipal corporation to which annexation is proposed to be made, who shall file such records in his office.”
Sections 707.01 through 707.30, Revised Code, referred to in the foregoing-quoted section constitute all the sections in Chapter 707 relating to incorporation of villages. Section 707.15 et seq. relate to incorporations initiated by petitions to Boards of Township Trustees and can have no application to proceedings before Boards of County Commissioners. Why these sections were included in the blanket reference in Section 709.03 is not apparent, but they are certainly not involved here. The pertinent portions of the sections, which are applicable so far as they define duties to be “performed by the board and other officers, ’ ’ are as follows:
Section 707.05, Revised Code, reads in part:.
“* * * The board shall then fix, and communicate to the agent of the petitioners, the time and place for hearing the petition, which time shall be not less than 60 days after such filing. Thereupon the agent for the petitioners shall cause a notice containing the substance of the petition, and the time and place where it will be heard, to be published * *
*433 Section 707.06, Revised Code, reads in part as follows:
“The hearing provided for in Section 707.05 of the Revised Code shall be public * * *. Any person interested may appear, in person or by attorney, and contest the granting of the prayer of the petition * * * and affidavits presented in support of or against the prayer of such petition shall be considered by the board, and the petition may be amended by its leave. If any amendment is permitted, whereby territory not before embraced is added, the board shall appoint another time for the hearing, of which notice shall be given as specified in Section 707.05 of the Revised Code.” (Emphasis added.)
Section 707.07, Revised Code, reads in part:
“After the hearing on a petition * * * the Board of County Commissioners shall enter an order on its journal allowing the incorporation if it finds that:
“(A) The petition contains all the matters required;
“(B) The statements in the petition are true;
< < * * #
“(E) The map or plat is accurate;
“ (F) The persons whose names are subscribed to the petition are electors [freeholders], residing in the territory;
“ (Gr) Notice has been given as required;
( ( * * #
“ (I) It is right that the prayer of the petition be granted.”
The amendments which are permissible under Section 707.06, Revised- Code, are not designated, but any amendments, whether withdrawal of names or changes in description, must be by leave of the Board of County Commissioners. This discretion is not vested in a board of trustees of a township where incorporation of a village is sought under the provisions of Sections 707.15 to 707.19, Revised Code. See State, ex rel. Lantz, v. Board of Trustees of Franklin Township, 147 Ohio St., 256, 70 N. E. (2d), 890, and State, ex rel. Moore, v. Trustees of Weathersfield Township, 161 Ohio St., 38, 117 N. E. (2d), 433.
In each of the cases here, complaint is made because the Board of County Commissioners at some time before finally approving or denying the annexation petition refused to permit further withdrawals of signatures, There is no specific statu *434 toi’y provision permitting withdrawal of signatures from annexation petitions and likewise no prohibition against seasonable withdrawals.
It would appear, therefore, that the power vested in the Board of County Commissioners (Section 707.06, Revised Code) to permit amendment of a petition may be exercised by it with respect to the withdrawal of signatures.
In the case of Rays v. Jones (1875), 27 Ohio St., 218, involving a road improvement, it was held in paragraphs two and three of the syllabus as follows:
“1. The jurisdiction of the Board of County Commissioners to make the final order for the improvement, under these statutes, is special, and conditioned upon the consent, at the time the final order is to be made, of a majority of the resident landholders, who are to be charged with the costs of the improvement.
“2. Resident landholders, who have subscribed a petition praying for such road improvement, may, at any time before such improvement is finally ordered to be made by the Board of County Commissioners, withdraw their assent by remonstrance, or having their names stricken from the petition, and after withdrawal of consent, such persons can no longer be counted’ as petitioning for the improvement.” (Emphasis added.) The language of the applicable statutes at that time clearly required the decision arrived at.
See, also, the case of McGonnigle v. Arthur, 27 Ohio St., 251. That rule of permitting withdrawal of signatures until the final decision of the administrative body obtained for a period of years.
Later, in the case of Dutten v. Village of Hanover (1884), 42 Ohio St., 215, where a petition was submitted to a village council to order an election on a question of surrender of its municipal powers, it was held that it was the duty of the council “before taking action thereon, to satisfy itself that it contains the requisite number of qualified petitioners,” and that, “while such petition is under consideration and before action thereon by the council, signers thereof may withdraw their *435 names from such petition, and if thereby the number of names is reduced below the requisite number, it is the duty of the council to refuse to order such election.” (Emphasis added.)
There, we have a dilution of the earlier principle of permitting withdrawals right up until “final action” to the principle of “action” alone.
We come next to the case of State, ex, rel. Kahle, v. Rupert, Aud. (1918), 99 Ohio St., 17, 122 N. E., 39, in which this court held in a per curiam opinion:
“In the absence of statutory provisions to the contrary an elector signing a petition authorized by the statutes of this state, invoking either official or judicial action, has a right to withdraw his name from such petition, or,' if he be the sole petitioner, to dismiss the same at any time before judgment has been pronounced, or before official action has been taken there-
i C # *» &
“While the statute does not in terms provide how soon after the expiration of ten days the clerk or city auditor must certify the same to the Board of Deputy Supervisors of Elections, nevertheless, such officer must perform this duty within a reasonable time thereafter. Upon his failure to certify within a reasonable time after the expiration of teii days, mandamus will lie to compel him to perform his duty under the statute. He cannot arbitrarily withhold certifying such petition to the Board of Deputy Supervisors of Elections for the purpose of permitting the withdrawal of further signatures; but until official action is taken by him, or an action in mandamus is brought, any persons signing a petition has the right to withdraw his name therefrom.” (Emphasis added.)
Since that case, it has been the accepted rule in Ohio that once official action is taken petition signers do not have the absolute right to withdraw their names, but it has not always been clear as to what constitutes such action. In the KaJile case, the only official action to be taken was by the clerk or city auditor in certifying a petition to the board of elections, but the principle established in that case has recently been approved and *436 followed in the cases of Lynn v. Supple, Clerk, 166 Ohio St., 154, 140 N. E. (2d), 555, and State, ex rel. Wilson, v. Board of Edn. of Shelby County School Dist., 166 Ohio St., 260, 141 N. E. (2d), 289.
In the case of People v. Jackson, 191 N. Y., 293, 84 N. E,, 65, 15 L. R. A. (N. S.), 1173, “official action” was defined as “such as properly belongs to the office and is intended by the officer to be official.”
In the Franklin County case, a formal order was adopted by the Board of County Commissioners of Franklin County directing that the petition be filed with the county auditor, fixing the day of hearing and ordering notification of the agent as to the time and place of such hearing. This, in effect, was affirmative administrative action taken by that board.
In the Hamilton County cases, the Board of County Commissioners went to even further steps before fixing the time and place of hearing on the petition, and even went further with respect to withdrawals of signatures (and withdrawals of withdrawals) and additions thereto after taking official action on July 26,1955. The commissioners’ proceedings thereafter were all within their discretion.
The confusion engendered because of the apparent inability of petition signers to make up their minds, as shown in the instant cases, has also been quite apparent in cases in other jurisdictions.
In the "Wisconsin case of Town of Blooming Grove v. City of Madison (1948), 253 Wis., 215, 33 N. W. (2d), 312, the withdrawal of signatures was permitted until final adoption of an annexation ordinance. Following that decision the rule was extended to permit “reinstatement of withdrawal signatures” before final action, in the case of Town of Greenfield v. City of Milwaukee (1956), 273 Wis., 484, 78 N. W. (2d), 909. In the most recent Wisconsin case, supplemental petitions containing new signatures were permitted to be filed and considered in determining the sufficiency of the petition at the time of final enactment. Town of Brookfield v. City of Brookfield (1957), 274 Wis., 638, 80 N. W. (2d), 800.
*437 ' On the other hand, i t has been held in California that, after a petition for annexation is filed, signers thereto can not by withdrawing their names deprive the board of jurisdiction. See Rogers v. Board of Directors of City of Pasadena (1933), 218 Cal., 221, 22 P. (2d), 509, and cases cited therein.
In the case of State, ex rel. De Concini, Atty. Genl., v. City of Phoenix (1952), 74 Ariz., 46, 243 P. (2d), 766, it is stated:
“Undoubtedly the greater number of cases dealing with this matter have laid down the rule that in the absence of constitutional or legislative provisions to the contrary, signers of petitions have an absolute right to withdraw therefrom at any time before final action has been taken thereon. * # * At the other extreme there is a line of cases which hold that once the petition has been regularly filed with the proper officer the right to withdraw has terminated. * * * See 126 A. L. R. 1031, for a complete and exhaustive annotation on the different rules as to the rights of signers of petitions to withdraw therefrom, from which it is manifest there is a complete lack of harmony in the decided cases.
“We hold that once affirmative legislative action-has commenced upon a petition for annexation, jurisdiction attaches and the petitioners cannot withdraw so as to divest the city council of jurisdiction to act in its legislative capacity. By affirmative action we are not implying that any action is sufficient, but it must be such as to put the legislative wheels in motion and looking toward the actual passage of the annexation ordinance. The mere checking of the petitions to ascertain if the statutory requirements have been fulfilled or even the filing of them with the clerk are merely preliminary ministerial steps and not the affirmative action we have referred to.
“We believe this middle ground between the two extremes is one that is fair and reasonable and until the Legislature declares otherwise will best meet the situation fairly. It preserves the rights of the petitioners by giving them additional time, after signing, in which to reflect upon the matter and give expression to their second thoughts, but at the same time it af *438 fords some measure of stability to voluntary petitions and protects the legislative processes of city governments.”
Whereas that case dealt with legislative action by a city council, the cases here deal with administrative action by a Board of County Commissioners.
The views set forth in the above-quoted opinion, however, are persuasive as tending toward more orderly processes of administrative and legislative procedures prescribed for annexation. Also, those views are more in accord with the “middle ground” principles which have obtained in Ohio since the Kahle case, supra.
We conclude, therefore, that, in the absence of statutory provisions to the contrary, a signer of a petition for annexation of territory to a city or village has a right to withdraw his name from such petition at any time before official action has been taken thereon, and that affirmative administrative action by a Board of County Commissioners such as the adoption of a formal order fixing a date of public hearing and directing notification to the agent of the petitioners as to such time and place of hearing taken after a determination by preliminary procedures that it has jurisdiction of a petition for annexation of territory to a city or village, which action is essential to the statutory process of granting or denying such petition, constitutes “official action” by such board. After such official action has been taken, the matter of permitting withdrawals or additions of signatures to such petition lies within the discretionary power of the Board of County Commissioners.
The judgment of the Court of Appeals in each of the cases herein is, therefore, affirmed.

Judgments affirmed.

Weygandt, G. J., Zimmerman, Taet, ■ Matthias, Bell and Peck, JJ., concur.